49 N.J. Super. 219 (1958)
139 A.2d 414
LUCILE FIORE PLAINTIFF-APPELLANT,
v.
ALBERT FIORE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1958.
Decided March 10, 1958.
*221 Before Judges PRICE, HANEMAN and SCHETTINO.
Mr. Walter R. Gottschalk argued the cause for plaintiff-appellant.
Mr. David Cohn argued the cause for defendant-respondent.
The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal is taken from two orders of the Matrimonial Division which contained (a) certain visitation and overnight custody rights in favor of defendant-father, with a provision that defendant need not pay support *222 for any given week if defendant's rights were interfered with; (b) an award of $25 per week support for the two infant children of the marriage, and (c) a denial of more than $100 counsel fee to plaintiff  the latter two, on grounds of insufficiency. Appellant's present attorney is the last of several retained by plaintiff in this litigation.
Prior to a discussion of this case on its merits, mention must be made of the practical difficulties encountered in discerning what the facts and issues are. Firstly, the great majority of the typewritten record is outrageously illegible; secondly, the orders and motions which should give a picture of the prior proceedings are not in logical or chronological order, thus rendering the past procedure difficult of comprehension; thirdly, not all the necessary pleadings have been made part of the record; finally, the plaintiff's brief is a hodge-podge which makes it difficult, if not impossible, to identify plaintiff's grievances other than to say that plaintiff and her counsel seem to be displeased with everything which has heretofore transpired.
From the briefs and a deficient record we gather the following. Plaintiff filed this suit for separate maintenance on December 9, 1954. The action was dismissed in April 1956. Plaintiff appealed. The Appellate Division reversed an overnight custody provision because no proof had been taken pertaining thereto. This opinion, not officially reported and not included in the record by appellant, was rendered on July 31, 1956. Pursuant to the mandate the trial court took testimony in Jersey City on November 14, 1956 and on December 20, 1956. Thereafter, the trial judge heard testimony in Newark on January 11, 1957, February 1, 8, 15 and March 22. Because of plaintiff's counsel's absence an order was not signed until June 27, 1957. This order was amended on August 23, 1957, and together these orders contain the provisions which are the bases of this appeal. While this case, with a Hudson County venue, was pending, plaintiff filed in October 1956 a matrimonial action for divorce with venue laid in Monmouth County. The assignment judge of Hudson County granted a stay of this second *223 action on defendant's motion to consolidate the second case with the one pending in Hudson County.
Appellant argues that the trial judge had no jurisdiction to try the issues of custody and support since these issues were encompassed by the second suit. There are two short but obvious answers to this contention. The first is that the second action was stayed in view of plaintiff's prior action in Hudson County, and the second is that the trial court has no discretion when a mandate issues from an appellate court. It is under a duty to obey the mandate.
"When an order of an appellate court goes with its remittitur to the court of original jurisdiction, it is there for the purpose of being carried into effect, and not for revision, correction or reversal." Isserman v. Isserman, 2 N.J. 1, 5 (1949); State v. Lefante, 27 N.J. Super. 320, 322 (App. Div. 1953).
The second point raised in appellant's brief is that the trial judge had been reassigned to the Law Division in Essex County and he therefore lost jurisdiction over the case. This argument is reminiscent of the technical grounds which prevailed under the New Jersey Constitution of 1844 but not under our present Constitution. The trial judge was reassigned by order dated December 17, 1956, to take effect January 2, 1957. A companion order directed him to continue the performance of his matrimonial court duties in the Hudson County vicinage. The records of the Administrative Office so state. Moreover, on the hearing on January 11, 1957 present counsel for appellant was so advised by the court. To raise this point on appeal borders on presumption. Additionally, the trial judge had already heard two days of testimony on the issues covered by the mandate of this court. We find not an iota of reason upon which to bottom this frivolous argument.
Appellant charges the trial court with non-compliance with R.R. 4:98-8(a) pertaining to the requirement that a probation office investigation and report shall be obtained before the award of custody and the rights of visitation. Appellant conceded that a Hudson County probation office investigation *224 and report were obtained, the report was placed on file and a copy of the report was received by the attorneys for plaintiff and defendant. The trial record shows that the investigator who made the investigation and report was available for cross-examination by each side and that both attorneys waived cross-examination. Appellant's present attorney contends that, since plaintiff was living in Monmouth County at the time of the hearings, the probation office of Monmouth County and not of Hudson County should have made the investigation and report and the trial court did not therefore comply with the above stated rule. The admitted facts refute this contention. The trial court acted properly and did comply with the rule.
On oral argument appellant's counsel conceded that defendant had the right to visit with his children  even volunteered that such right should be unlimited provided the visits did not interfere with the eating and sleeping times and habits of the two infants. These concessions are not persuasive in view of the trial court's finding on at least two occasions that plaintiff failed to comply with the terms of the order of visitation and that plaintiff's explanations were neither convincing nor made in good faith.
Plaintiff also argued that the overnight visitation rights of the defendant extending from 5:00 P.M. Friday to 5:00 P.M. Sunday on the last week-end of each month should be set aside because of the tender ages of the two children. The testimony does not bear out the argument. The record establishes the friendly relationship existing between the second child, about three years of age, and the father; that, as to the older child, whose age is less than five, no trouble took place at first but, as she grew older, she exhibited tantrums and committed acts of disrespect towards her father. We are convinced that her actions were the result of plaintiff's campaign against the child's father. We are reminded of the ancient saying that as the twig is bent so grows the tree.
Some of the representations made at oral argument by plaintiff's counsel are not borne out by the transcript. For *225 example, a statement was made that a Dr. DeSpirito had examined the children on behalf of defendant and that he had not been called to testify because the doctor would not back up the court's order of visitation or the defendant's visitation rights. The record shows that on the specific trial day the doctor was not available in the morning because of an operation but was willing to appear about 4:00 o'clock. Counsel were so advised by the trial judge. Defendant did not insist on waiting for this doctor but submitted his case on the then record. Defendant's counsel's characterization of opposing counsel's charge on this point as "wild" is well taken.
The record amply sustains the trial court's general findings on support, visitation and counsel fees.
R.R. 1:5-4(b) states in part:
"On a review of any cause * * * involving issues of fact not determined by the verdict of a jury, new or amended findings of fact may be made, but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
This court has said:
"Beyond that, every intendment is in favor of the judgment under review, and we should not disturb the court's finding of fact unless we are well satisfied that the finding is a mistaken one." Capone v. Norton, 11 N.J. Super. 189, 193 (App. Div. 1951), affirmed 8 N.J. 54 (1951); 5 C.J.S. Appeal & Error, § 1533.
However, we cannot sustain the trial judge's order of August 23, 1957 insofar as it provides for abatement of support payment for the children if defendant's visitation and overnight custody rights are interfered with by plaintiff or members of her family. The welfare of the child is the primary, paramount and controlling consideration in determining the question of visitation and custody of a minor child. The legal rights and claims of either parent and the wishes and personal desires of said parent must yield, if opposed to what the court, in the discharge of its duty, regards the welfare of the child to be. True, it is recognized *226 that the mother is the natural custodian of a child. In contests for the custody of minor children, the law favors the mother. If she is a fit and proper person to have the custody of her children, other things being equal, the mother should be given their custody. Dixon v. Dixon, 71 N.J. Eq. 281 (E. & A. 1906). But neither father nor mother has the greater right to the custody of the child in a contest between them. Turney v. Nooney, 5 N.J. Super. 392, 397 (App. Div. 1949). Thus, the rule that a mother should be given preference in awarding the custody of her children is not inflexible. There are circumstances under which the best interests of children will be served by giving their custody to their father or some other person, even though the children are of tender age and the mother is a morally fit person for the trust.
In Daly v. Daly, 21 N.J. 599 (1956), Mr. Justice Oliphant stated:
"It is universally recognized that the family is the basic unit of the complex society in which we live and that its stability is indispensable to the public welfare and health, morals and upbringing of children is its core and essence. A child has the right to be equipped for its future mature life, and this equipment is nothing more than education in its generic and inclusive sense, implying physical, intellectual and moral development. This has been recognized in all civilizations, with few exceptions since Crito said to Socrates, `No man should bring children into this world who is unwilling to persevere to the end in their nurture and education.' Plato, Crito (Jowett transl. 1871). Cf. Jonitz v. Jonitz, 25 N.J. Super. 544 (App. Div. 1953)." 21 N.J. at page 604.

* * * * * * * *
"We have thus stated in broad and general terms the principles generally applicable to questions of support of children, but these statements should not be construed that this court will countenance a constitutional trespass on the rights, civil or criminal, of the father when properly asserted." 21 N.J. at page 605, emphasis added.

* * * * * * * *
"The decided cases and our statutory provisions make it clear that the father's duty to support his minor children is a duty flowing directly from him to them without regard to any marital dereliction of his wife. The cases are legion where a divorce is granted in favor of the husband but an order for the support of the children by the husband is entered." 21 N.J. at page 609. *227 We conclude from our analysis of the authorities that the duty of a father to support his children and the right of a father to visitation and overnight custody are not dependent upon or connected with each other. Bruguier v. Bruguier, 12 N.J. Super. 350, 354 (Ch. Div. 1951). See also Nelson, Divorce and Annulment (2d ed. 1945), §§ 15.02, 15.09, 15.10, 16.36 and 17.15. We hold that the self-executing part of the order of August 23, 1957 which provides that if defendant's rights of visitation and partial custody are not strictly adhered to by plaintiff, "the support for that particular week is abated forthwith," shall be stricken and vacated. Therefore, the amounts abated by defendant under said order shall be paid within 15 days from the issuance of the mandate on this appeal.
We next discuss the obligations of plaintiff as general custodian of the children in relation to the rights of the defendant-father and of the children. In Turney v. Nooney, 5 N.J. Super. 392, 397-398 (App. Div. 1949), Judge Jacobs stated the rules of conduct which must be followed by plaintiff in this case:
"Our courts have often expressed the view that neither the father nor the mother has the greater right to the custody of their child and that, in a contest between them, the happiness and welfare of the child is the determining factor. Seitz v. Seitz, 1 N.J. Super. 234 (App. Div. 1949). However, in promoting the child's welfare, the Court should strain every effort to attain for the child the affection of both parents rather than one. See Bierck v. Bierck, 123 A. 537, 538 (N.J. Ch. 1923), not officially reported, where Vice-Chancellor Leaming expressed the view `that the greatest benefit a court can bestow upon children is not so much to be found in determining which parent shall enjoy their physical custody as it is in insuring that the children shall not only retain the love of both parents, but shall be at all times and constantly deeply imbued with love and respect for both parents.' Where, as under the circumstances here presented, the issue is the custody of a six year old son whose father is in a position and sincerely desires to enhance their mutual love and affection, the mothers' obligation, if she wishes to retain the primary custody properly granted to her, is not merely to refrain from active resistance; on the contrary, she should affirmatively aid and encourage his efforts. Cf. Willis v. Willis, 118 A. 333 (N.J. Ch. 1922), not officially reported." (Emphasis added.) *228 We emphasize not only the obligations a plaintiff has but also the right and privilege a child has in getting to know, love and respect both parents. No court should permit either parent to interfere with the successful attainment of these facets of a child's welfare. In re Jackson, 13 N.J. Super. 144, 147 (App. Div. 1951); Thurman v. Thurman, 73 Idaho 122, 245 P.2d 810, 32 A.L.R.2d 996 (Sup. Ct. 1952).
As stated above, the trial court twice found that plaintiff had not complied with the order granting defendant the rights of visitation and partial custody. Is the trial court helpless in the face of plaintiff's refusal or failure to comply with the order of visitation and overnight custody?
Parents who dispute visitation or custody should be made to realize that the courts do not give a child to a parent as a sort of prize of war. Unfortunately, no judge and no law can repair the physical and emotional damage imposed upon a child by the two persons who have dominated his world. The child cannot understand the reasons for the widening breach between his mother and father. He stands frightened and powerless at the terror which eats away at his familiar and comfortable home, happiness and security. Therefore, parents should be warned that  as stated above  all courts are interested primarily in a child's welfare and happiness, and only secondarily in the parents' rights of custody and visitation. If necessary, a child should be removed from the muddled and emotional antics of his parents and given to a stranger. This drastic surgery may produce another and more stable environment for the child to his ultimate, if not immediate, benefit.
Another recognized method of dealing with a custodian such as the plaintiff-mother in this case is to punish her with a jail sentence if again found to be in contempt of court. Giving to a woman the status of a favored suitor clothes her with no immunity from the sanctions for arrogance towards and contempt of a court. Such drastic action might well save the ultimate happiness of children. Trial courts have not hesitated in sending to jail a husband and *229 father who fails in his financial duty towards his family. How much more important is it for the courts to insist upon the compliance by a mother with the obligations expounded by Judge Jacobs, even if it means a jail sentence?
We have read the 657 pages of the badly typewritten and illegible transcript. Our firm conclusion is that the trial judge was extremely patient, extremely considerate and was most liberal in permitting extensive examinations and cross-examinations. His task was made particularly difficult by the almost continuing interruptions of both counsel, but mostly by the insistence of plaintiff's present and last counsel who considered it the trial judge's obligation to permit him to wander afield regardless of prior testimony in the record, regardless of the rules of evidence and regardless of the repeated rulings on a given point by the trial judge.
With regret we refer to other actions on the part of plaintiff's counsel. An attorney owes his client undivided allegiance, the utmost application of skill, industry, learning and the use of all appropriate means to protect and enforce the client's interests. The attorney should not be deterred by any fear of judicial disfavor. But, to the office of judge, the attorney owes respect, candor and the maintenance of the dignity and the independence of the judiciary. Canons of Professional Ethics, canon 1, states in part:
"It is the duty of the lawyer to maintain towards the Courts a respectful attitude not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance."
In his brief and on oral argument counsel violated this canon. His stated "reason" is that his actions are in vigorous execution of his advocacy of his client's cause. No basis exists for his references to the trial judge. His statements are inexcusable. In view of his violation of this canon and of his non-compliance with other rules of the court no counsel fee and no costs will be allowed on this appeal.
The orders appealed from are affirmed as modified herein.