In re the MARRIAGE OF Norman E. HAYDEN and Penny L. Hayden.

Norman E. HAYDEN, Petitioner-Appellant,

v.

Penny L. HAYDEN, Respondent.

No. 40691.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 11, 1979.

John L. Oliver, Jr., Oliver, Oliver & Jones, P. C., Cape Girardeau, for petitioner-appellant.

Michael A. Price, Richey & Price, Cape Girardeau, for respondent.

SATZ, Judge.

In this cause, the trial court entered an order dissolving the marriage of appellant (husband) and respondent (wife) and awarded custody of their eight year old son, Scott, to the husband and custody of their four year old daughter, Amy, to the wife. The court also devised a temporary custody and visitation plan and divided the marital property. On appeal, the husband raises the single issue: whether the trial court erred in awarding custody of Amy to his ex-wife instead of him. We affirm the judgment of the trial court.

At trial and on appeal, the husband attempted to show that his ex-wife had demonstrated a pattern of emotional inability to cope with the children, had physically and verbally abused them, had consistently neglected their physical well being, had been guilty of moral indiscretions while the children were in their home, had no definite plans for the care of the children, and could not cope with everyday life without large doses of a tranquilizing drug. From this record as construed by the husband, he contends that the trial court had no alternative but to award the custody of Scott to him; and, further, he argues, there were no exceptional circumstances requiring separation of Amy from Scott and, thus, the custody of both Amy and Scott should have been awarded to him. We do not agree.

Our review of this court-tried case is defined by Rule 73.01, which directs us to review the case upon both the law and evidence, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. We are to sustain the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it

erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Blessing v. Blessing*, 539 S.W.2d 699, 702 (Mo.App.1976). More specifically, the trial court's determination of child custody is not to be lightly cast aside and we are to defer to that determination unless we are firmly convinced that the welfare of the children requires some other disposition. *Johnson v. Johnson*, 526 S.W.2d 33, 36–37 (Mo.App. 1975); *Ackfeld v. Ackfeld*, 483 S.W.2d 614, 616 (Mo.App.1972). We also keep in mind that the child's best interest is the cardinal principle controlling child custody issues. It is not a factor which itself is placed on the legal balance scales but rather it is the single standard by which all relevant factors are to be measured.

We have reviewed the present record in the light of these principles and guidelines with, we believe, the same painstaking concern and meticulous care shown by the parties and, hopefully, with the same sensitivity and perspicacity shown by the objective and sensible trial judge, who heard evidence in this case for an approximate three-day period.

The trial judge awarded a child to each parent and, thus, implicitly found both husband and wife to be fit parents. *E.C.S. v. J.D.L.*, 529 S.W.2d 423, 425–426 (Mo.App. 1975). No useful purpose would be served by restating in detail the specific evidence the trial court could have chosen to believe in reaching the implicit finding that the wife was a fit parent. However, without intending to place greater weight on the following evidence by singling it out, we do note, for example, that the children's pediatrician saw no evidence of child abuse or neglect and, aside from Scott's diagnosed hyperactive condition, he considered both children to be healthy and normal. In addition, a six year friend of the family, who, as a close neighbor, spent a good deal of time with the family, collectively, and the wife and children, individually, described the family, in detail, as a normal household and the children as being properly cared for and nurtured by the wife as well as the hus-

band. With this and additional evidence, the trial court could and did properly find no support for the husband's complaints about his ex-wife's fitness. On the present record, then, neither the wife nor the husband were demonstrably unfit to be custodian, and, with both of them seeking custody, the wife sensibly could be considered to be a better custodian for a child as young as Amy. *In re Marriage of Zigler*, 529 S.W.2d 909, 913 (Mo.App.1975); *S.G.E. v. R.L.J.*, 527 S.W.2d 698, 703 (Mo.App.1975).

Having agreed with the trial judge's decision that the wife was a fit parent and, thus, a fit custodian for Amy, we are not directly confronted with the separation of Scott from Amy for, as indicated, that issue has not been directly raised in this appeal. However, Scott's separation from Amy may well affect Amy's interest and welfare, and, addressing this issue, we do find that Scott's separation was proper in the present case.

While we have often stated that absent exceptional circumstances the children of divorced parents should not be separated, we have repeatedly emphasized that the trial court has the power to decree such separation as long as the separation serves the best interests of the children. *E.C.S. v. J.D.L., supra; J. v. E.*, 417 S.W.2d 199, 203 (Mo.App.1967). As noted, Scott has been diagnosed as a hyperactive child. He and Amy resided with their father, the husband, from the filing of the petition for dissolution, in September, 1977, through the completion of the hearings in February, 1978. During this period, Scott's behavior and scholastic ability showed marked improvement. It is not clear from the record whether Scott's improvement was due to his separation from his mother, or to his continuing medical care and treatment, or to a specific change in his medication, or to the interest, concern, training and teaching of an exceptionally able first grade teacher; or whether his improvement was the synergistic effect of all these factors. However, given these facts, the trial court followed the sensible and rational path of allowing Scott to remain with the husband and, at

the same time, insured Scott's and Amy's continued sibling association through the court's thoughtful custody and visitation plan.

The facts of this case presented no clear choice to the trial court. The wife was not shown to be guilty of child abuse, neglect or serious moral impropriety; nor, for that matter, was the husband. Therefore, upon this record, we cannot say the best interests of the children, and, in particular Amy, would be served by a different disposition of their custody; and we affirm the judgment of the trial court.

DOWD, P. J., and SMITH, J., concur.