203 N.J. Super. 385 (1985)
497 A.2d 215
L., K., C., B. AND H.K., PLAINTIFFS
v.
G. AND H., HIS WIFE, DEFENDANTS.
Superior Court of New Jersey Chancery Division-Bergen County, Family Part.
Decided June 18, 1985.
*387 Jo Ann Catello Onello for plaintiffs.
Amanda Clark for defendants (Freint, Jacobs and Bell, attorneys).

OPINION
KRAFTE, J.S.C.
Do adult, emancipated siblings have the right to visit with their minor siblings? Neither the Legislature nor the courts of this state have heretofore addressed such a situation.
A brief familial history which culminates in this application is in order. In 1975, G. married his present wife, H., his first wife, E., mother of six children having died in 1972. Unfortunately, following the present wife, H's. arrival in the household, discord arose between her and the four oldest girls, namely, L., K., C., and B. As time passed, instead of melding into a new family unit, discord escalated, and a strong resentment developed. *388 As each of the girls reached the age of eighteen, they moved out of the home and began living together, creating their own independent family unit, securing education as well as employment for themselves. With H.K., the maternal grandmother joining, the girls instituted this action against their father and stepmother, G. and H.
The procedural history of this case begins in April 1984, when plaintiffs filed a Verified Complaint against defendants for visitation with their respective minor siblings and grandchildren, V. and Ch. On October 19, 1984, the parties entered into a Consent Final Judgment, which was subject to review, if necessary, within ninety days. The Judgment provided that plaintiffs, L., K., C. and B. would have the right to visit with Ch. and V. twice per month at the home of defendants, where said minors reside. Plaintiffs were also afforded the right to telephone Ch. and V. during reasonable hours, and if they wished, to exchange gifts. It was also agreed that defendant H. would not interfere with visitation, and that if she were home at the time of the visitation, she would not be present in the immediate room where Ch. and V. met with their sisters. The parties further agreed to attempt to be as cordial as possible under the circumstances, and to take part in family counselling. Finally, the parties understood that the Judgment was intended as a step toward greater visitation in the future.
In November 1984, sibling-plaintiffs filed a Notice of Motion for visitation outside of the defendants' home with their minor siblings, Ch. and V. Said motion was scheduled for oral argument on January 18, 1985. In the mean time, plaintiffs filed an Order to Show Cause for an emergent hearing to take place on Friday, December 21, 1984, to allow them Christmas Eve off-premises visitation with their siblings. A hearing took place on that date, at which time plaintiff's request was denied, and the Order to Show Cause application carried until January 18, 1985, to be heard concurrently with plaintiffs' motion seeking extended visitation outside the defendants' home.
*389 Plaintiffs assert that their minor siblings, V. and Ch., have continually expressed a desire to see, meet with and share the life experiences of their sisters. Plaintiffs further assert that when the parties entered into the Consent Final Judgment, it was but an acknowledged initial step toward more liberal and open visitation outside the home of defendants. They state that the atmosphere at defendant's home where visitation occurs is cold and antagonistic, and that defendants have proven to be rigid and unwilling to abide by the terms of the Judgment in working toward greater visitation.
Plaintiffs contend that it is in the best interest of the minor children to have a relationship with their siblings. They state that they do not wish to compete with defendants for Ch.' and V's. affection, nor do they intend to interfere with defendants' parenting, to influence the minor children against their father or stepmother, or to cause disharmony to the children's homelife. On the contrary, plaintiffs state that their reason for instituting this action is to avoid any surreptitious meetings between themselves and their siblings which would be in defiance of defendants' wishes. They merely wish to share in the lives of their brother and sister.
Defendants, on the other hand, strongly oppose plaintiffs' application. They assert that it would not be in Ch.' or V.'s best interest to have their older siblings competing with defendants for the children's affections. Defendants believe that, based upon their past experiences with plaintiffs, any off-premises visitation will be used to influence the minor children against them and to undermine their authority, thereby causing disruption of the home life defendants and the two minor children now enjoy. Defendants also contend that they have extended invitations to plaintiffs to join Ch., V. and themselves at home for meals, including Christmas dinner, but that plaintiffs have declined. It is the defendants' contention that the language contained in the Final Judgment which pertains to "greater visitation" in no way meant "outside visitation". Finally, *390 defendants assert that plaintiffs lack standing to bring this action and thus, their application must be denied.
There is no question that during pending or post-judgment matrimonial litigation, our Legislature, in N.J.S.A. 2A:34-23, provided the courts of this State with broad powers to make determinations concerning the care, custody, education and maintenance of children.[1] Moreover, R. 5:1-2(a) provides in pertinent part:
All civil actions in which the principal claim is unique to or arises out of a family or family-type relationship shall be brought in the Family Part . ..
Based upon the above-cited authority, this Court is satisfied that the instant case is well within its jurisdictional confines as it pertains to V. Since Ch. has reached the age of eighteen during the pendency of this action, this matter is moot as to him.
This Court must next address defendants' assertion that plaintiffs lack standing to bring this action. Specifically, they contend that plaintiffs possess neither a common-law nor statutory right to request visitation with their siblings.
Again, this Court refers to R. 5:1-2(a), which includes as cognizable in the Family Part "all civil actions in which the principal claim is unique to or arises out of a family or family-type relationship...." It stands to reason that an immediate family member, such as a parent, grandparent, brother or sister, would possess an interest which is, at the very least, equal to, if not superior to that of any other person who may possibly have a stake in the outcome of an action which is cognizable in the Family Part. What right could be more basic, more precious than that of sharing life experiences with one's *391 own brother or sister? Surely, nothing can equal or replace either the emotional and biological bonds which exist between siblings, or the memories of trials and tribulations endured together, brotherly or sisterly quarrels and reconciliations, and the sharing of secrets, fears and dreams. To be able to establish and nurture such a relationship is, without question, a natural, inalienable right which is bestowed upon one merely by virtue of birth into the same family. See R. 5:1-2(a). Therefore, this Court finds that plaintiffs are clearly interested parties in this case, and have standing to seek relief by their request for visitation with their siblings.
While no statutory right has been created in this State which would allow siblings to bring a cause of action for visitation, several other state legislatures have addressed this issue. Louisiana's Civil Code contains a section which specifically addresses visitation rights of siblings:
If one of the parties to a marriage dies, [or] the obligation to live together is terminated by an action of separation from bed and board, or the marriage is terminated by divorce, the siblings of a minor child or children of the marriage may have reasonable visitation rights to such child or children during their minority if the Court in its discretion finds that such visitation rights would be in the best interests of the child or children and that the siblings have been unreasonably denied visitation rights. La. Rev. Stat. Ann. Sec. 9:572. [Emphasis supplied].
Similarly, the Code of Virginia extends the right of visitation to various family members:
Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, and upon decreeing that neither party is entitled to a divorce, the Court may make such further decree as it shall deem expedient concerning the custody and support of the minor children of the parties, and concerning visitation rights of the parents and visitation privileges for grandparents, step-parents or other family members. Va.Code Sec. 20-107.2. [Emphasis supplied].
While the two aforementioned statutes grant visitation rights to family members or siblings specifically, several state legislatures have expanded third party visitation rights which include persons who are not related to the child. Some of these statutes limit such visitation to persons having an interest in the welfare of the child, including the following:

*392 In the discretion of the court, reasonable visitation rights may be granted to any other person having an interest in the welfare of the child. Cal.Civ.Code Sec. 4601. [Emphasis supplied].
... In the discretion of the court reasonable companionship or visitation rights may be granted to any other person having an interest in the welfare of the child. Ohio Rev.Code Supp. Sec. 3109.05(B). [Emphasis supplied].
Reasonable visitation rights shall be awarded to parents and to any person interested in the welfare of the child in the discretion of the court, unless it is shown that such rights of visitation are detrimental to the best interests of the child. Hawaii Rev.Stat. Sec. 571-46(7). [Emphasis supplied].
In an action for divorce or for legal separation or for placement of a child when both parents have died, the court may ... make, modify, or vacate an order for the custody of or visitation with the minor child that may seem necessary or proper, including an order that provides for visitation by a grandparent or other person if that is in the best interests of the child. Alaska Stat.Title 25.24.150(a). [Emphasis supplied].
The court may order visitation rights for any person when visitation may serve the best interests of the child whether or not there has been any change of circumstances. Wash. Rev. Code Ann.Title 26.09.240. [Emphasis supplied].
The Superior Court may grant the right of visitation with respect to any minor child or children to any person, upon application of such person ... In making, modifying or terminating such an order the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Conn. Gen. Stat. Ann.Title 46b-59. [Emphasis supplied].
If a child custody dispute has been submitted to a circuit court as an original action under this Act, or has arisen incidentally from another action in a circuit court or another judgment of a circuit court, for the best interest of the child, the court may . .. provide for reasonable visitation of the child by the parties involved, the maternal or paternal grandparents, or by others, by general or specific terms and conditions. Mich. Comp. Laws Ann. Sec. 722.27. [Emphasis supplied].
One other statute confers visitation rights upon third parties, that of the State of Maine. However, that statute does not limit visitation to family members or to parties interested in the welfare of the child, nor does it expressly confine such visitation to instances where it would only serve the best interest of the child, thereby making it the broadest statute in the land:
The Court may order reasonable rights of visitation with the minor child to a parent of the child, to any third persons, or to both. Maine Rev.Stat.Ann. Title 19, Sec. 214. [Emphasis supplied].
This Court parenthetically notes that several of these statutes allowing third party visitation rights refer specifically *393 to situations in which either one or both of the parties to a marriage has died, or the parties have separated or divorced. However, as stated above, this Court is satisfied that it possesses inherent equitable jurisdiction as well as jurisdiction pursuant to court rules, to entertain this matter, even in the absence of a pending or completed matrimonial action. See R. 5:1-2(a).
While the New Jersey Legislature has not as yet codified the right of siblings to visit with one another, it has afforded grandparents the privilege of visiting with their minor grandchildren. N.J.S.A. 9:2-7.1 provides:
Where either or both of the parents of a minor child, residing within this State, is or are deceased, or divorced or living separate and apart in different habitats, regardless of the existence of a court order or agreement a grandparent or the grandparents of such child, who is or are the parents of such deceased, separated or divorced parent or parents, may apply to the Superior Court in accordance with the Rules of Court, to have such child broughtbefore such court; and the court may make such order or judgment, as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.
Since the Statute's effective date, February 1972, and its amendment in 1973, several cases have arisen dealing with visitation rights of grandparents. The special quality of a grandparent-grandchild relationship was recognized by the Supreme Court in Mimkon v. Ford, 66 N.J. 426, 437 (1975), wherein it stated:
It is biological fact that grandparents are bound to their grandchildren by the unbreakable links of heredity. A very special relationship often arises and continues between those very same grandparents and grandchildren ... Visits with a grandparent are often a precious part of a child's experience, and there are benefits which develop upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this court is blind to human truths which grandparents and grandchildren have always known.
In Bennett v. Bennett, 150 N.J. Super. 509, 512-513, (App. Div. 1977), certif. den. 75 N.J. 526 (1977), the court held:
There is nothing in this statute (N.J.S.A. 9:2-7) which asserts that a grandparent's rights of visitation are derivative.... The granting of such rights depends only on the determination by the court as to whether the order therefor is justified "as the best interest of the child may require."
*394 Upon remand, the trial court was instructed that in determining whether such visitation was in the child's best interest, it could consider both the advantages and disadvantages which might flow from granting visitation with her grandmother. Id.
The issue of grandparent visitation was again addressed in Globman v. Globman, 158 N.J. Super. 338 (App.Div. 1978), certif. den. 77 N.J. 493 (1978). There the Court stated:
In addressing ourselves to the question of grandparental visitation, we are aware of the acute sensitivities and sensibilities involved and we are aware that ultimately the best interests of the child must control. In our view, N.J.S.A. 9:2-7.1, which creates an independent visitation right in the grandparents of minor children, whose parents are deceased, divorced or separated, creates a presumption that the best interests of the child ordinarily are served by maintaining their contact and communication with their grandparents. Id. 158 N.J. Super. at 345-46.
The Court went on to state that the hostility which existed between the children's father and their grandparents would not alone justify elimination of grandparental contact which "can be independently an emotionally supportive factor for the children in ways quite distinct from the parental relationship." Id. at 348, citing Mimkon v. Ford, 66 N.J. 426, 437 (1975). The court also stated that the fact that the custodial parent does not desire visitation between his children and the parents of his spouse can never by itself be sufficient reason for denying that visitation:
The whole point of the statute is obviously to permit such visitation in the face of denial thereof by the custodial parent. Globman v. Globman, supra, 158 N.J. Super. at 348.
In Youth & Family Services v. Torres, 185 N.J. Super. 234 (J.D.R.C. 1980), aff'd. 185 N.J. Super. 182 (A.D. 1982), the Court noted that N.J.S.A. 9:2-7.1 changed the then common-law rule which had denied visitation based on the fact that "judicial enforcement of grandparent visitation rights would divide proper parental authority, and the child might be forced into a conflict between the parents and grandparents." The Court further noted that both Mimkon, supra, and N.J.S.A. 9:2-7.1 indicate a broad recognition of grandparents' rights.
*395 Just as grandparents are bound to their grandchildren by the unbreakable links of heredity, Mimkon, supra, 66 N.J. at 437, so too are siblings bound to one another by virtue of the fact that they were born to, and in most cases, raised by, the same biological parents. A sibling relationship can be an independent emotionally supportive factor for children in ways quite distinctive from other relationships, and there are benefits and experiences that a child reaps from a relationship with his or her brother(s) or sister(s) which truly cannot be derived from any other. Those of us who have been fortunate enough to experience a sibling relationship are aware of these basic human truths. Surely, the right to visit with one's own brother or sister is equal to, if not greater than the right to visit with one's grandchildren. While the Legislature has extended such a privilege to grandparents, it has yet to accord siblings the same right. The fact that custodial parents may not desire visitation between their children and the children's sibling can never, in and of itself, be a sufficient reason for denying that visitation. Rather, this Court finds that its inquiry must focus upon whether the child's best interests will be served by maintaining contact and communication with their siblings.
While no New Jersey court has considered the issue of visitation between siblings, other jurisdictions have recognized the unique character of the sibling relationship, and the importance of its growth and development. In In re Marriage of Hayden, 588 S.W.2d 165 (Mo. App. 1979), custody of the minor son was awarded to the father, while the minor daughter was placed with the mother. The issue on appeal was whether the trial court erred in awarding custody of the parties' daughter to her mother instead of her father. The Court held that, given the facts of the case, the trial court followed the sensible and rational path of allowing the minor son to remain with his father, and at the same time "insured Scott and Amy's continued sibling association through the Court's thoughtful custody and visitation plan." Id. at 168. Subsequently in Roberts v. Roberts, 668 S.W.2d 249, 252 (Mo. App. 1984), the Missouri Court *396 of Appeals noted that, although the trial court allowed the minor son to remain with his mother, and the minor daughter with her father and his fiance, the custody and visitation schedule which had been arranged was, as stated in Hayden, supra, "A sensible plan allowing for continued sibling association."
In Ferencak v. Moore, (1982) 300 Pa.Super. 28, 445 A.2d 1282, the trial court ordered visitation between two minor children "to establish and maintain a lasting relationship." Id. at 1286. On appeal, the Court noted the strong entrenchment of the policy of raising siblings together. The Court found that the circumstances were not adequate to raise the siblings apart, and that, upon remand, the trial court must look to the relationship between the siblings themselves, and the benefits which would derive therefrom. Id.
In Tobias v. Tobias, (1977) 248 Pa.Super. 168, 374 A.2d 1372, 1375, the trial court awarded custody of the minor son to his father. On appeal, the court noted that the trial judge properly considered both the child's preference, as well as the policy of raising siblings together. The Court further found that the trial judge properly concluded that the child's best interests "would be met by living with his father, with frequent visits with his siblings." Id. [Emphasis supplied].
Several New York cases have recognized the desirability of continued association between siblings. In Sandman v. Sandman, 64 A.D.2d 698, 407 N.Y.S.2d 563 (1978), the trial court awarded custody of the minor son to his mother, and that of the minor daughter to her father. On appeal, the Court found that the trial judge acted properly in awarding custody in such a manner, especially "where sufficient visitation between the children had been ordered in recognition of their need for association." Id. at 565.
Another case addressed the issue of sibling visitation outside of the spectre of matrimonial litigation. In In the Matter of the Adoption of Anthony, 113 Misc.2d 26, N.Y.S.2d 377 *397 (Fam.Ct. 1982), the child's father had died, and his mother was unable to care for him and his three siblings. The three siblings were placed in the same foster home where, unfortunately, there were insufficient accommodations for a fourth child. Thus, Anthony was placed in another foster home. Anthony visited and maintained a relationship with his siblings over the years, and strongly desired to continue to do so, despite their separation. The Court held that contact and visitation between Anthony and his birth siblings were necessary to promote his best interests, and ordered that the child have continued contact, including visitation.... Id. at 381.
The importance of nurturing the sibling relationship was also recognized in Obey v. Degling, 37 N.Y.2d 768, 375 N.Y.S.2d 91, 94, 337 N.E.2d 601, 602 (1975) where the court stated:
Young brothers and sisters need each other's strength and association in their everyday and often common experiences, and to separate them, unnecessarily, is likely to be traumatic and harmful. The importance of rearing brothers and sisters together, and thereby nourishing their familial bonds, is also strengthened by the likelihood that the parents will pass away before their children.
A similar view was expressed by the Court in Matter of Patricia Ann W., 89 Misc.2d 368, 392 N.Y.S.2d 180 (Fam.Ct. 1977). There, permanent neglect proceedings were brought against the biological father of the two minor girls. A minor son had been previously placed in the custody of his maternal grandmother. In directing the care agency which had custody of the girls to submit a plan providing for the integration of the girls' brother into their lives, the Court stated:
The overwhelming motivation of the court in providing for the best interests of Michelle and Patricia Ann is that they have a meaningful relationship with their brother. Perhaps this would not be as strong if these siblings were not aware of each other and might not have to deal with the reality of being cut off by any action of this court giving its imprimatur to this unnatural severance ... In the final analysis, when these children become adults, they will have only each other to depend upon. Id. at 187.
This Court also notes that there is a developing trend which places significant emphasis upon the continuance of the child's relationships with various family members:

*398 The court's determination should aim at providing the child with an ongoing relationship with as many members of his or her family of origin as possible .. . the court should consider the comparative willingness of the two contestants to provide the child with access to the other parent, to siblings, grandparents, and other relatives ... Regardless of the legal determinations of divorce and custody, the child has a need to express and channel concern about all family members. ...

New Trends in Child Custody Determinations. Law and Business, Inc., Harcourt, Brace, Joranovich (1981) pp. 146-147. [Emphasis supplied].
Based upon the foregoing analysis, this Court finds that the relationship between a child and his/her siblings is a significant and unique one, from which a myriad of benefits and experiences may be derived. The bonds which develop between brothers and sisters are strong ones, and are, in most cases, irreplaceable. New Jersey has always been a forerunner in the field of family law. The time has come for this State to take its place among those which recognize the necessity and importance of the right of siblings to visit with one another. Therefore, this Court finds that siblings possess the natural, inherent and inalienable right to visit with each other. This right is, of course, subject to the requirement that such visitation be in the best interest of a minor child, for it is that which is of paramount concern to this Court.
It is this Court's task, therefore, to consider the myriad of factors which would affect V.'s best interest in these particular circumstances. This Court has already alluded to the numerous social, emotional and even educational advantages which may evolve out of the sibling relationship. However, this Court must also consider any possible disadvantages which may flow from V.'s off-premises visitation with her sisters.
It is abundantly clear that plaintiffs and defendants have had an admittedly difficult and disagreeable relationship, which has created a most unfortunate schism within the family. Apparently, the parties' animosity toward one another continues to date. It is this Court's strong and primary desire to prevent V. from being thrust into the middle of the obvious conflict which *399 exists between her adult sisters on one hand, and her father and stepmother on the other.
V. is nearly sixteen years old. Presumably, she is of sufficient age and capable of forming an intelligent opinion, and of communicating to this Court her feelings involving off-premises visitation with her older sisters. See Kavrakis v. Kavrakis, 196 N.J. Super. 385 (Ch.Div. 1984), where child's suitable age to signify consent was found to be fourteen years. See also, Conn. Gen. Stat. Ann. Title 46b-59. "[T]he Court shall be guided by the best interest of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent opinion." Therefore, this Court conducted an in camera interview with V., at which time she was carefully questioned as to her desire to visit outside of her home with plaintiffs. V. stated that she was aware of problems which existed between defendants and plaintiffs, but was extremely reticent when questioned in any detail concerning the cause of these problems. Although V. expressed a willingness and a desire to have a relationship with her older sisters, she also expressed concern that any outside visitation would be against defendants' wishes and would cause them displeasure. She further stated that she believed the visitation which had been taking place in her home was satisfactory thus far.
This Court is aware that "In visitation matters the preference of the child should be subject to closer scrutiny, especially where immature emotions as well as influence by the custodial parent may warrant diminishing the weight to be accorded such preference." Wilke v. Culp, 196 N.J. Super. 487, 498 (App.Div. 1984). Moreover, this Court is also aware that the preference of the child is only a factor to be given consideration, and is not determinative. Id. citing Palermo v. Palermo, 164 N.J. Super. 492 (App.Div. 1978); Lavene v. Lavene, 148 N.J. Super. 267, 271 (App.Div. 1977), certif. den. 75 N.J. 28 (1977), on remand 162 N.J. Super. 187 (Ch.Div. 1978). However, it became clear during the in-camera interview with V. that she *400 had no desire to become involved in the adversity which exists between plaintiffs and defendants. This Court would be loathe to order that a child be thrust into the middle of an admittedly longstanding conflict between the parties, leaving her to possibly be used as a pawn or weapon by one party against the other.
This Court reiterates that it is most unfortunate that this hapless situation exists between defendants, and the four older children. For, in the final analysis, the person who stands to lose the most is V., the innocent bystander. However, this Court is constrained to find that, based upon the factual posture of this case, to order off-premises visitation with plaintiffs would not serve V.'s best interest. Therefore, plaintiffs' motion is denied.
NOTES
[1] Pending any matrimonial action brought in this State or elsewhere, or after judgment of divorce or maintenance, whether obtained in this State or elsewhere, the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just....