257 N.J. Super. 585 (1992)
608 A.2d 1005
MAYRA C. COMAS, PLAINTIFF,
v.
JESUS COMAS, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Hudson County.
Argued April 21, 1992.
Decided May 13, 1992.
*586 For Plaintiff: Maureen Sogluizzo.
For Defendant: Aristides F. Hernandez.
HEALY, J.S.C.
This case comes before the court on defendant's application for a rehearing on all issues. Specifically, defendant requests a reversal of the prior finding of domestic violence. In the alternative defendant requests a modification of the final order to allow visitation to occur at defendant's residence in Manhattan where defendant now lives with his new wife and second son. Under the existing final order of January 3, 1992, the defendant has no visitation with his son, age eight. Prior to the alleged incident of domestic violence the defendant had visitation *587 with his son at the home of the paternal grandmother in North Bergen, as agreed by the parties.
The parties were divorced on June 13, 1989 and custody of their son, J, was awarded to the mother. The visitation ordered pursuant to the divorce was to be "liberal and reasonable."
Around Thanksgiving 1991, the parties had discussed allowing J to visit his father at the father's home in New York City. It is unclear from the testimony how often this visitation occurred. However, it is certain that this visitation arrangement became a source of conflict between the parties and that a scheduled visit to Manhattan on December 14, 1991, the date of J's half-sister's birthday, did not come about.
On December 22, 1991, both plaintiff and defendant, as well as their son, were in attendance at the home of the defendant's mother. The parties became involved in a bitter argument that, according to plaintiff, culminated with the defendant physically assaulting her. Plaintiff claimed that the defendant grabbed her upper arms and fiercely shook her as she attempted to depart the premises. Once off the premises, plaintiff immediately proceeded to the North Bergen Police Station where she filed a criminal complaint. She also filed a domestic violence complaint with the Union City Police (plaintiff resides in Union City) and a temporary restraining order (TRO) was issued by the Municipal Court. The TRO ordered the standard no contact restraints, granted temporary custody of J to plaintiff, denied defendant any visitation until the final hearing and set the return date for the final hearing for January 3, 1992.
Plaintiff contends that defendant had notice of the return date but does not dispute that proper service was never effected. Naturally, defendant insists he had no knowledge of the court date and that plaintiff possessed the necessary information to insure proper service. Therefore, it is not surprising that the defendant did not appear at the final hearing. The Superior Court, Chancery Division, Family Part continued the restraints in the TRO including the denial of visitation until *588 further court order. Upon learning of this result, defendant retained legal counsel and filed the instant application.
Since it was conceded by plaintiff's counsel that proper service was never effected, there is no issue as to this court's subject matter jurisdiction and the same is accepted by all parties.
Based on the plaintiff's testimony of physical assault presented at the rehearing, the court held that the defendant committed an act of domestic violence on the afternoon of December 22, 1991. Pursuant to this finding an amended final restraining order was issued continuing the restraints in the TRO. This leaves the court to decide defendant's alternative argument.
As part of defendant's application, he requested that the court permit visitation with his son to take place at his apartment in Manhattan. Plaintiff resists such a suggestion because, according to her, the defendant's new wife has stated she hates J, and has, indirectly, threatened to harm him. Legally, plaintiff asserts that N.J.S.A. 9:2-2 bars the removal of the child from the State for the requested visitation.
N.J.S.A. 9:2-2 provides:
When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order. The court upon application of any person in behalf of such minors, may require such security and issue such writs and processes as shall be deemed proper to effect the purposes of this section. (Emphasis added.)
The plain language of the statute does not specify which parent, custodial or noncustodial, is subject to the Act. Moreover, this court was unable to locate a reported, controlling case within the State where this statute was even asserted against a noncustodial parent.
Its operation, as to one, the other, or both parties, will turn on the definition the court gives the term "removed". Should *589 "removed" be interpreted as encompassing all departures from the State of New Jersey then the statute would clearly be applicable to both the custodial and noncustodial parent. Conversely, if "removed" is deemed to mean a change of residence beyond the boundaries of the State then the statute will apply only to the custodial parent. As of yet the Courts of New Jersey have not formally defined this term.
Still, this court is not completely without direction. The purpose of N.J.S.A. 9:2-2 has been frequently and consistently stated. "[T]he purpose of the statute is to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationship." Cooper v. Cooper, 99 N.J. 42, 50, 491 A.2d 606 (1984); see also Holder v. Polanski, 111 N.J. 344, 350, 544 A.2d 852 (1988); D'Onofrio v. D'Onofrio, 144 N.J. Super. 200, 204-205, 365 A.2d 27 (Ch.Div. 1976), aff'd., 144 N.J. Super. 352, 365 A.2d 716 (App.Div. 1976). The statute's application only to the custodial parent is verified by the manner and method in which the courts have utilized it.
This mutual right of the child and the noncustodial parent to develop and maintain their familial relationship is usually achieved by means of visitation between them. Because the removal of the child from the state may seriously affect the visitation rights of the noncustodial parent, the statute requires the custodial parent to show cause why the move should be permitted. Cooper, 99 N.J. at 50-51, 491 A.2d 606.
Moreover, the standard used to determine "good cause", until recently, had been stated as, "whether the removal is substantially advantageous under all of the circumstances to the custodial parent and the child and can be accomplished in such a manner as reasonably to preserve the parental relationship between the child and the non-custodial parent." Helentjaris v. Sudano, 194 N.J. Super. 220, 227, 476 A.2d 828 (App.Div. 1984), certif. denied 99 N.J. 200, 491 A.2d 699 (1984); (Emphasis added.) see also D'Onofrio v. D'Onofrio, 144 N.J. Super. 200, 207-208, 365 A.2d 27 (Ch.Div. 1976), aff'd., 144 N.J. Super. 352, 365 A.2d 716 (App.Div. 1976). The recent change, which reduces the custodial parent's burden of proof of good cause, See Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988), in no *590 way alters the inference that N.J.S.A. 9:9-2 is applicable only to the custodial parent.
From the foregoing it is evident that the Legislature intended, and the courts of this state have interpreted, the term "removed" to denote a change in residence beyond the boundaries of the State. Therefore this court concludes that N.J.S.A. 9:2-2 does not prohibit temporary departures from the jurisdiction for the purpose of visitation.
To determine whether defendant's requested visitation should be granted, the analysis must now turn to the best interests of the child. The "primary concern in determining questions of visitation and custody is the best interests of the child." Wilke v. Culp, 196 N.J. Super. 487, 497, 483 A.2d 420 (App.Div. 1984), certif. denied 99 N.J. 243, 491 A.2d 728 (1985). The conditions, subject to which visitation is granted, are controlled by the best interests of the child. Hallberg v. Hallberg, 113 N.J. Super. 205, 209, 273 A.2d 389 (App.Div. 1971); L. v. G., 203 N.J. Super. 385, 400, 497 A.2d 215 (Ch.Div. 1985). In Hallberg, the Appellate Division remanded to the trial court for a determination as to whether a requested two-week vacation was in the best interests of the children. Hallberg, 113 N.J. Super. at 209, 273 A.2d 389. Likewise in L. v. G., the court, after expressly stating that the adult siblings had an "inherent and inalienable right" to visitation, denied "off-premises" visitation with the child pursuant to a finding that it would not be in the child's best interest. Id. 203 N.J. Super. at 400, 497 A.2d 215.
Furthermore, it is the objecting party's burden to show that the proposed visitation is not in the child's best interest. "A request by the father for a two-week uninterrupted summer visitation with the two children is reasonable unless there be an affirmative showing by the mother, that it would not be in the best interests of the children." Hallberg, 113 N.J. Super. at 209, 273 A.2d 389.
The question now becomes what quantum of evidence is necessary to support a holding that the requested visitation is *591 not in the best interests of the child. Both the federal and state courts have recognized a parent's right to the companionship of a child as a fundamental interest protected by the Federal and State Constitutions. Franz v. United States, 707 F.2d 582, 586 (D.C. Cir., 1983); In the Matter of Baby M, 109 N.J. 396, 447, 537 A.2d 1227 (1988). In recognition of the grave importance of parental rights it has been held that the denial of those rights shall be ordered only upon clear and convincing proof that contact between the parent and child "will cause physical or emotional harm to the child, or where it is demonstrated that the parent is unfit." Barron v. Barron, 184 N.J. Super. 297, 303, 445 A.2d 1182 (Ch.Div. 1982). However, here we have, not a denial of parental rights, but a restriction of, or condition upon, a parent's visitation rights. The courts of this State have not yet directly or formally addressed this important and recurrent issue. This court is unable to decide the present case without first determining this threshold question.
The courts of this State have recognized "that the burden of proof can vary depending upon the type of proceedings, the comparative interests of the parties, the relative litigational strengths or weaknesses of the parties, the access of the parties to proof, and the objectives to be served by the evidence in the contest of the particular proceeding." Romano v. Kimmelman, 96 N.J. 66, 89, 474 A.2d 1 (1984). The New Jersey Rules of Evidence provide for two civil burden of proof standards; preponderance of the evidence, and clear and convincing proof. N.J.R.Evid. 1(4). The determination of which standard should be employed in each case should not be arbitrary. "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." Addington v. Texas, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323, 329 (1979). The "preponderance of the evidence" standard is applicable in the majority of civil cases. In re Evans, 227 N.J. Super. 339, 347, 547 A.2d 344 (Law Div. 1988). The clear and convincing standard is the exception to the rule and is utilized only in appropriate specified *592 settings. "This higher standard of proof apparently arose when courts of equity were faced with claims that were unenforceable at law under the Statute of Wills, the Statute of Frauds or the Parol Evidence Rule. It undoubtedly was developed because of a concern that such claims would be fabricated." N.J.R.Evid. 1(4) comment 6 (Citing Herman & MacLean v. Huddleston, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)). The clear and convincing proof standard is applied "when the threatened loss resulting from civil proceedings is comparable to the consequences of a criminal proceeding in the sense that it takes away liberty or permanently deprives individuals of interests that are clearly fundamental or significant to personal welfare." In re Polk License Revocation, 90 N.J. 550, 563, 449 A.2d 7 (1982). This standard is also applied where "circumstances or issues ... are so unusual or difficult, that proof by a lower standard will not serve to generate confidence in the ultimate factual determination." Id. at 568, 449 A.2d 7.
This court finds that none of the above special circumstances warranting the imposition of the clear and convincing proof standard are present in the instant case. Furthermore, the court holds that the preponderance of the evidence standard is more appropriate here. In Fiore v. Fiore, 49 N.J. Super. 219, 139 A.2d 414 (App.Div. 1958); certif. denied 28 N.J. 59, 145 A.2d 168 (1958); the court stated that:
The welfare of the child is the primary, paramount and controlling consideration in determining the question of visitation and custody of a minor child. The legal rights and claims of either parent and the wishes and personal desires of said parent must yield, if opposed to what the court, in the discharge of its duty, regards the welfare of the child to be. Id. 49 N.J. Super. at 225, 139 A.2d 414.
That being the law, any evidence that a certain aspect of the visitation poses a threat to the child's welfare must be carefully considered by the court. And, if the greater weight of the evidence indicates such a threat, the visitation should be restricted in order to protect the child. Thus, the proper standard for the burden of proof is the lightest available civil burden, by the preponderance of the evidence.
*593 In the instant case plaintiff's only complaint against the defendant was that he spends too little time with their son. Plaintiff conceded that the defendant's treatment of his son was "alright". Plaintiff's objection to the visitation in New York City is attributable entirely to the defendant's new wife. However, plaintiff's only evidence that such visitation would not be in the best interests of the child, are statements allegedly made by the defendant's second wife and repeated to the plaintiff by the defendant. Although the Rules of Evidence may be relaxed for "reasons peculiar to the case at hand", In the Matter of Baby M, 109 N.J. 396, 467. n 1, 537 A.2d 1227 this court finds the testimony of plaintiff no more trustworthy than any other hearsay statement, and holds such inadmissible. Moreover, both defendant and his current wife adamantly denied making the statements, and the court found them both to be credible witnesses. In addition, the court, sua sponte, ordered the appearance of the defendant's current wife, and upon her testimony found her to be a responsible and intelligent individual.
It is an established policy "that the courts should endeavor that children of separated parents should be imbued with love and respect for both parents, and where children are in custody of one parent, the court should endeavor to effect this facet of the children's welfare by conferring reasonable rights of visitation on the other parent." Wilke, 196 N.J. Super. at 496, 483 A.2d 420. The courts of New Jersey have further recognized "that the relationship between a child and his/her siblings is a significant and unique one, from which a myriad of benefits and experiences may be derived. The bonds which develop between brothers and sisters are strong ones, and are, in most cases irreplaceable." L. v. G., 203 N.J. Super. at 398, 497 A.2d 215. "The Court's determination should aim at providing the child with an ongoing relationship with as many members of his or her family of origin as possible." Id. at 398, 497 A.2d 215 quoting New Trends in Child Custody Determinations. Law *594 and Business, Inc., Harcourt, Brace, Jovanovich (1981) pg. 146-147.
The plaintiff provided absolutely no proper evidence that the visitation in Manhattan would not be in the best interests of the parties' child. In fact, this court believes just the opposite. Quite simply the plaintiff has failed to meet the burden required to uphold her objection. It appears that the parties' child will benefit from a closer relationship with his father and his father's new wife and child.
Surely, it would be in this child's best interest to allow him to visit with his father's new family in the most natural setting, their home. It is important that defendant's son be as involved as possible in his father's life, and know that he is welcome in his father's home. This cannot be accomplished if the visitation in Manhattan is not permitted. This court specifically finds that it is in the best interest of J to visit his father at the father's residence in Manhattan.
Therefore, the Court orders defendant's requested visitation in Manhattan is hereby granted along with the other relief provided in the Order of the Court.