VICTORIA W. SMITH, PLAINTIFF, v. RICHARD S. SMITH, DEFENDANT.

Juvenile and Domestic
Relations Court
Morris County

Decided November 18, 1964.

Mr. *Albert B. Jeffers* for plaintiff (*Messrs. Jeffers & Mountain,* attorneys).

Mr. *T. Louis Mintz* for defendant.

Polow, J. J. D. R. C. This opinion will provide the statement required by *R. R.* 6:3–11 of reasons for the determination entered by order dated October 16, 1964, filed November 6, 1964, reducing defendant's obligation for support of two infant children from $60 to $30 per week, after plaintiff had removed the children from this State to Florida to seek a divorce.

The matter was first heard on May 13, 1964. Testimony at that hearing established the following facts: Plaintiff and defendant are 25 and 28 years of age respectively. They were married August 15, 1959, in Morristown, and had

lived together in the Morristown area from that date until they separated on April 3, 1964. Plaintiff then left their jointly owned home taking with her the two infant children of the marriage, a boy under two and a girl just over three years of age. Plaintiff sought to justify her leaving by her testimony concerning alleged repeated abusive conduct by defendant while under varying degrees of alcoholic influence.

Although plaintiff declined to attribute to defendant the characteristics of a "drunk" or an "alcoholic" she nevertheless insisted that he drinks excessively and becomes nasty when drinking. She described numerous scenes including slapping, pushing, pulling and threats of physical harm, commencing in June 1960 and culminating on April 3, 1964, at which time she told defendant that she was leaving "to think things over."

She described defendant, a Princeton graduate employed by the General Electric Credit Corporation as manager of its Morristown office at $8,500 a year, as a generous, good husband who becomes nasty and abusive when drunk. He customarily has a couple of drinks on his way home from work and then two or three more before dinner. He has been unwilling or unable to cope effectively with this problem and she described an intense fear of his violent temper. On the other hand, she does not deny that he loves his children and they love him.

At the suggestion of the court and with consent of counsel no determination was made on plaintiff's application for support for herself at the original hearing but the matter was continued and both parties ordered to consult with a psychiatrist appointed by the court at the expense of defendant. During that interim period defendant agreed to pay the sum of $40 per week for support of the two children and visitation privileges were established.

Thereafter, the parties made six visits to the court-appointed psychiatrist during May and June of 1964 and two reports were sent by the doctor to the court through the probation department. On June 19, 1964 the parties again

appeared before the court. They advised that they had been visiting the psychiatrist and future visits were contemplated. Plaintiff was still unwilling to return to defendant but both parties indicated they would continue to seek marital guidance. They had been "dating" each other and defendant was permitted to visit with the children.

In his first report dated June 1, 1964, the psychiatrist indicated his concern about the children and his concurrence with the court's opinion that these parties should not be separated and that "their marriage, for at least the children's sake deserves another chance." He further indicated that they were both in need of marital counselling and that the blame rested with both parties, who were equally guilty of shirking their marital responsibilities. However, in his second report dated July 4, 1964, the psychiatrist concluded that "even though I dislike seeing these people separate, I have concluded that their personalities are so incompatible that they will never make their marriage work." The first report was more favorable toward defendant but the second report leaned somewhat in favor of plaintiff.

The parties appeared in court again on July 9, 1964, at which time plaintiff would no longer consider a reconciliation although defendant was steadfast in his profession of love for his wife and his desire that his family return to live with him. Plaintiff did not dispute the sincerity of his professed feelings but insisted that he was unable to change and that living with him would endanger her physical and mental well-being.

Defendant testified concerning the factual allegations of plaintiff and described his income and expenses. The court found that plaintiff had not produced evidence of "cruel and inhuman conduct" to justify her separation from defendant and was therefore not entitled to support under *N. J. S.* 2A:4–18. The sum of $60 per week was awarded for support of the two infant children. The order also provided for the hours of defendant's visitation rights. There was no attack on the original order by either party.

On October 2, 1964 defendant, his attorney and plaintiff's attorney appeared in court on the return date of defendant's application for a modification of the original order. Defendant testified that his primary reason for seeking modification of the support order was his inability to meet his weekly payments and satisfy all of his personal obligations. However, after the application for reduction had been filed, he received a telephone call from plaintiff indicating that she had taken the children out of New Jersey, that she was calling from Maryland on her way to Florida and that she was going to Florida with the intention of obtaining a divorce. She said she had been advised that no grounds existed for a divorce in New Jersey. This testimony was not contradicted by plaintiff's counsel who participated fully in the proceedings. Counsel for both sides agreed to submit briefs and on October 16, 1964, the existing order was modified in that the amount of support for the two children was reduced from $60 to $30 per week on the following grounds:

1. Plaintiff had effectively deprived defendant of his right to visit with his children, which right had been established as an incident to the original order of support, in that she had removed the children from New Jersey to Florida for the purpose of obtaining a divorce, contrary to the public policy of this State as set forth in *N. J. S. A.* 9 :2–2.

2. The order of support granted on July 9, 1964, in the sum of $60 per week for the two infant children, was based upon testimony of plaintiff with regard to her needs and expenses to provide for the two children. The circumstances surrounding such needs and expenses had changed with the removal of the children from the State and there was no longer any evidence of the requirements of plaintiff for support of the children before the court.

With regard to the first ground, it has been held to be the general rule that the duty of the husband to support children of the marriage and his right of visitation are not interdependent. *Daly v. Daly,* 39 *N. J. Super.* 117 *(Juv. & Dom.*

*Rel. Ct.* 1956), affirmed 21 *N. J.* 599 (1956). Plaintiff argues that based upon this principle and upon the natural obligation of a father for the welfare of his children, who should not be punished for their parents inability to get along, this court lacks the power to grant a reduction on this application. Plaintiff argues further that based upon the authority contained in *In re Stevens,* 27 *N. J. Super.* 276 (*App. Div.* 1958), the Juvenile and Domestic Relations Court has no jurisdiction over custody and visitation, as stated in plaintiff's brief "where the issue of support is the only issue before the Court."

Although the *Daly* case and others in New Jersey and other states stand for the proposition that the obligation to support is not as a general rule dependent upon the right of visitation, *Bruguier v. Bruguier,* 12 *N. J. Super.* 350, 354 (*Ch. Div.* 1951); 34 *A. L. R.* 2d 1456; 67 *C. J. S., Parent & Child,* § 15, *p.* 695; *Fiore v. Fiore,* 49 *N. J. Super.* 219, 227 (*App. Div.* 1958), nevertheless a compelling contrary philosophy permeates almost all decisions relating to rights of visitation. This philosophy includes not only the obligation of both parents to love and know their children, but also the right and privilege a child has in getting to know, love and respect both parents. "No court should permit either parent to interfere with the successful attainment of these facets of a child's welfare." *Fiore v. Fiore,* 49 *N. J. Super.* 219, 228 (*App. Div.* 1958); *In re Jackson,* 13 *N. J. Super.* 144, 147 (*App. Div.* 1951). Where the welfare of the children requires that they have reasonable visitation with their father, the courts have not been loath to bring pressure on the mother to make such visitation rights effective by using the economic sanction of temporarily depriving her of support for the children or reducing such support. *Daly v. Daly, supra,* 39 *N. J. Super.* 117, at *p.* 125.

"One of the devices used by the courts to give effectiveness to a father's visitation rights, where the children have been taken out of the State by the mother to a place so distant as in effect to destroy such rights, is to reduce, discontinue or suspend an existing order for

468

the support of the children until the children are returned or until in some other fashion the father's visitation rights can be fully protected. See *Feinberg v. Feinberg,* 72 *N. J. Eq.* 810 (*Ch.* 1907) ; *Von Bernuth v. Von Bernuth,* 76 *N. J. Eq.* 200 (*Ch.* 1909) ; *Bobinski v. Bobinski,* 285 *App. Div.* 836, 137 *N. Y. S. 2d* 432 (*App. Div.* 1955) ; *Beddini v. Beddini,* 281 *App. Div.* 701, 117 *N. Y. S. 2d* 511 (*App. Div.* 1952) ; *In re Schwartz,* 279 *App. Div.* 1090, 113 *N. Y. S. 2d* 455 (*App. Div.* 1952) ; *Goldner v. Goldner,* 284 *App. Div.* 961, 135 *N. Y. S. 2d* 337 (*App. Div.* 1954)." *Ibid.,* at *p.* 124.

"* * * And, as stated earlier, this court has authority, where the welfare of the children so require, in such a case, to incorporate in the support order adequate provision for visitation rights by the father and to use the sanction of temporary deprivation or reduction of such support as a means of making such visitation rights effective." *Ibid.,* at *pp.* 128–129.

*Daly* deals with a case cognizant in the Juvenile and Domestic Relations Court under the provisions of the Uniform Reciprocal Support Act. By way of *dictum,* the opinion suggests that there is a limitation on the power of this court to deal with visitation rights in a direct proceeding. (39 *N. J. Super.,* at *p.* 121.) If true, such a limitation could lead to rather bizarre results. In a case before the Juvenile and Domestic Relations Court of this State, where the children may reside in California (or Kentucky as in *Daly*), and may have never set foot in New Jersey, this court would have the power to use its support order as a device to give effectiveness to a father's rights of visitation; but in a hypothetical direct proceeding under identical circumstances, with the one exception that the children have always been residents of this State and continuously within its jurisdiction, the court would be powerless to impose the sanction of reducing or discontinuing support even though the wife has left the State in order to frustrate the husband's privilege to see his children, and even though she has violated the stated public policy of *N. J. S. A.* 9 :2–2. *Cf. Turney v. Nooney,* 9 *N. J. Super.* 333, 340 (*Ch. Div.* 1950) ; *Fantony v. Fantony,* 36 *N. J. Super.* 375, 379 (*Ch. Div.* 1955) ; *West's N. J. Digest, Divorce,* ⬅300 ; *Casteel v. Casteel,* 45 *N. J. Super.* 338, 352-53 (*App. Div.* 1957) ; *Merwin v. Merwin,* 140 *N. J. Eq.* 104 (*E. & A.* 1947) ; *Sheehan v. Sheehan,* 38 *N. J. Super.* 120,

126 (*App. Div.* 1955); *Grove v. Grove,* 26 *N. J. Super.* 154 (*App. Div.* 1953); *Daly v. Daly, supra.*

The absurdity of such a result suggests the inevitable answer to the inquiry. The *Daly dictum* could not have been within the scope of the legislative intent. As an incident to the power to award support, where children of the marriage are involved, the Juvenile and Domestic Relations Court is obliged to establish precise hours of visitation in many cases. Otherwise, it would be hopeless to pretend that any measure of security for the children in their relationships with both parents could be attained. Any attempt to create a degree of stability for children of separated parents, by providing financial support only, would be an exercise in futility.

Experience has shown that only too often, unless the court exercises its power to protect the welfare of the children, a separated wife is not likely to provide reasonable visitation privileges voluntarily. The children may well be used as weapons to inflict punishment upon the other parent for real or imagined wrongs. Thus, not only is additional discord encouraged by the lack of a visitation order but also any hope of establishing a reasonable relationship between the children and their father is destroyed.

In a contest between parents, the happiness and welfare of the children should be the determining factor and the court should strain every effort to attain for the child the affection of both parents rather than one. "The greatest benefit a court can bestow upon children" is to insure that they shall not only retain the love of both parents but shall at all times and constantly be "deeply imbued with love and respect for both parents." *Turney v. Nooney,* 5 *N. J. Super.* 392, 397 (*App. Div.* 1949).

There remains the argument that under *In re Stevens,* 27 *N. J. Super.* 130 (*App. Div.* 1953), 27 *N. J. Super.* 276 (*App. Div.* 1953), the power to deal with visitation is held to reside exclusively in the Superior Court. With regard to the issues in the case *sub judice,* this argument, too, must be rejected. This court has the task "not so much to dispose of

controversies *inter partes,* as to serve society's interest in the parties' welfare—in this case, to preserve the family." *Mattox v. Mattox,* 43 *N. J. Super.* 111, 117 (*App. Div.* 1956); *Cahen v. Cahen,* 47 *N. J. Super.* 141 (*App. Div.* 1957); *Paragian v. Paragian,* 48 *N. J. Super.* 207 (*Juv. & Dom. Rel. Ct.* 1957).

██ The earlier *Stevens* decision was based upon a complaint made by grandparents for "custody" of a grandchild under *N. J. S. A.* 9:2–9 and 10 charging that the father was unfit. Proof of unfitness under *N. J. S. A.* 9:2–9 was insufficient but relief was granted by the Juvenile and Domestic Relations Court involving "custody" in a proceeding held on appeal to be cognizable solely in the Superior Court. Thereafter, on the re-hearing the applicants sought to obtain relief under *N. J. S.* 2A:4–18 which gives the Juvenile and Domestic Relations Court concurrent jurisdiction with the Superior Court to deal with matters of "temporary custody." Relief again was denied by the Appellate Division which held that the application by grandparents for "custody" of their grandchild one weekend in each month is not "temporary custody" within the meaning of the statute. "Temporary custody" refers to custody for a short time rather than the right to have periodic visits at fixed times each month for an indefinite period. That ruling must be construed to be limited to the facts upon which it was based. The Appellate Division did not rule in the *Stevens* case that the Juvenile and Domestic Relations Court lacks the power, incident to granting an order of support, to establish specific hours of visitation for the benefit of the husband and father. In practice, the Juvenile and Domestic Relations Court is expected to and should establish the rights of visitation as an incident to an order granting support of children in appropriate circumstances. 27B *C. J. S., Divorce,* § 316, *p.* 516; *Pollock v. Pollock,* 31 *Misc.* 2d 437, 220 *N. Y. S.* 2d 116 (*Sup. Ct.* 1961).

██ This court exercised its discretion to modify the original support order for an additional reason. The original order of support of July 9, 1964 was based upon the testimony of plaintiff setting forth her needs with regard to rent, food,

and other circumstances involving her place of abode in Morris County. The rules specifically provide for the retention of jurisdiction by the Juvenile and Domestic Relations Court to revise and alter existing orders for support "as justice may require." *R. R.* 6:3–10. There is an inherent power in the court to modify an order of support where it is found that the circumstances have changed. *Bonanno v. Bonanno,* 4 *N. J.* 268 (1950). In view of the fact that the plaintiff no longer resides in Morris County, the circumstances upon which she based her testimony in obtaining the original order of support have changed. There is no testimony before the court at present as to her current needs and expenses for the support of the two children now with plaintiff in the State of Florida.

For the reasons set forth herein the previous order of support is reduced from $60 to $30 per week for the two children of the marriage of the parties, effective October 2, 1964, the return date of defendant's application for modification.