290 N.J. Super. 152 (1996)
675 A.2d 249
WILLIAM J. RIDLEY, PLAINTIFF,
v.
JOANNE RIDLEY (DENNISON), DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part Monmouth County.
Decided January 26, 1996.
*154 Lucie Sterling, for plaintiff.
Joanne Ridley (Dennison), defendant pro se.
O'HAGAN, J.S.C.
This case presents difficult issues concerning enforcement of court orders mandating visitation by a non-custodial parent with the children born of the marriage. Plaintiff, William J. Ridley, has not seen his children since 1988. Notwithstanding plaintiff's consistent efforts to effectuate visitation and resulting court orders, he has been rebuffed time after time after time. He contends his former wife, defendant Joanne Dennison, has prevented such visits and further argues defendant is principally responsible for the estrangement that now exists between himself and the three children.
Plaintiff seeks a ruling by the court, pursuant to R. 1:10-3, that defendant, by her actions, has violated his rights. Upon such finding, plaintiff maintains defendant must be incarcerated because of her wilful, intentional and continued violation of the court's orders dated November 16, 1994, and July 5, 1995. Expressing his frustration, plaintiff seeks, as well, an order terminating his obligation to pay child support on behalf of his son, Michael Ridley, age nineteen, presently a student at Monmouth University, as well as a similar termination when his daughters, Michelle and *155 Marielle, now seventeen and thirteen years old respectively, reach their eighteenth birthday.
In support of his application, plaintiff maintains that his former wife has systematically and consistently alienated his children from him, utilizing both direct and subtle means, so that now all three children wish no contact with their father and are unwilling to visit. It is clear that the children have refused plaintiff's visitation in New Jersey, and declined to go forward on a three week visitation ordered by the court in November 1994.
The facts which underlie this dispute have been gleaned from the hearings conducted on July 5, 1995, and September 6, 1995, and the exhibits introduced into evidence. The parties were divorced on March 4, 1985. The judgment of divorce awarded custody of the three children to defendant subject to plaintiff's right to visitation. Almost from its inception, visitation was difficult. The children expressed serious reluctance to leave defendant's home, and it became necessary, in their words, for plaintiff to "drag" very young children away from their mother so that the visitation could go forward. Notwithstanding the passage of many years and their youth when the alleged incidents occurred, the children claim to have a vivid memory of the various times plaintiff insisted on visitation despite their expressed reluctance. Ultimately, plaintiff's visitation completely stopped, apparently as a culmination of the visit when Marielle, then age five, returned home complaining of fatigue and was later hospitalized. The only evidence introduced in the case established that it was learned later that Marielle suffered from meningitis. Defendant, as well as Michelle, the parties' daughter, who was age nine at the time, claim that Marielle nearly died because of plaintiff's neglect. Neither the passage of years nor Michelle's youth when the incident occurred have dimmed her anger toward her father. This is particularly striking since she was not present at the visitation, only Michael and Marielle went with their father for this particular weekend. Plaintiff has been unable to discuss the events and his understanding of the facts with Michelle. This event has come *156 to symbolize, in the children's minds, plaintiff's alleged neglect of their interests and lack of concern for their well-being. Yet, plaintiff's explanation is common sensical and was neither contradicted nor challenged at the hearing. That is, Marielle was taking medicine when the weekend visitation began and plaintiff saw to it that she continued to take the medicine while under his supervision. Marielle expressed merely that she was tired and, therefore, plaintiff allowed his daughter to rest. Both Marielle and Michael returned home at the designated time. Plaintiff was, however, completely unaware that Marielle was seriously ill. But for the untoward consequences (i.e. Marielle's hospitalization), plaintiff's action at the time of the illness and his reaction to Marielle's complaints of fatigue are not unlike that acted out by non-custodial parents and children time and time again. Certainly, many parents enjoying an intact marriage have experienced circumstances when a child's illness or condition becomes far more serious than originally contemplated, notwithstanding a strict observance of the doctor's instructions.
There is no question that plaintiff has sought time and time again to effectively visit with his children, and has through the years sought the court's aid. The court's orders have been unavailing, as notwithstanding victories in court, visitation has been effectively denied.
Plaintiff is a Lieutenant Colonel in the Army and is now stationed in Germany. On November 16, 1994, the court ordered that the children were to visit with their father in Germany for a three week time period at plaintiff's expense. At the same time a plenary hearing was ordered concerning the appropriate level of child support that plaintiff was to pay for the three children.
The plenary hearing commenced on July 5, 1995. Plaintiff voluntarily agreed during the course of the hearing to increase support, acquiescing to defendant's exact demand, notwithstanding the fact that defendant, who appeared pro se, was having significant problems in proving her case. At the time, plaintiff advised *157 that he was not going to allow money to stand in the way of his visitation with the three children.
Rather, plaintiff emphasized in the strongest of terms his desire to rekindle a relationship with the three children. It was made clear to defendant at the hearing that the children's visitation with plaintiff was to take place in August 1995, for a period of three weeks. The children, however, did not travel to Germany, nor otherwise visit with plaintiff, explaining to their father in a terse letter that their mother had urged them to visit but they refused. That position was advanced, as well, at the hearing conducted on September 6, 1995, by defendant, Michael and Michelle, all three reiterating in very much similar language that defendant was not at fault nor to blame for the children's refusal to visit. By way of contrast, the two children seem to hold plaintiff responsible for every problem that now confronts them. The positions taken by the children at the hearing were, at times, internally contradictory and often at variance with both the facts and common sense. The protestations of defendant and the two children lack credibility. Clearly, it is defendant who has, by overt and covert means, influenced the children, resulting in the present estrangement between plaintiff and his three children.
Plaintiff has established his entitlement to relief pursuant to R. 1:10-3. In the context of this case, fashioning a remedy to address defendant's wrongdoing is difficult, especially bearing in mind plaintiff's residence in Germany. Before determining the remedy, certain well established tenets of the law must be set forth. Thus, a custodial parent is charged with the duty of assisting the non-custodial parent to foster a relationship of love and affection with the children born of the marriage. Wilke v. Culp, 196 N.J. Super. 487, 496, 483 A.2d 420 (App.Div. 1984), certif. denied, 99 N.J. 243, 491 A.2d 728 (1985). The children have the right of access to their non-custodial parent, Matter of Baby M., 109 N.J. 396, 466, 537 A.2d 1227 (1988), and a right to the love, guidance and assistance that the non-custodial parent might provide. Daly v. Daly, 39 N.J. Super. 117, 123, 120 A.2d 510 (Cty.Ct. *158 1956), aff'd 21 N.J. 599, 123 A.2d 3 (1956). Courts have expressed that children have the right to understand that the non-custodial parent, although no longer residing with them, continues to have their best interests in mind. Beck v. Beck, 86 N.J. 480, 495, 432 A.2d 63 (1981).
Defendant, by her actions, has made such relationship of trust and confidence between plaintiff and his children most difficult. The relief granted plaintiff herein is designed to encourage defendant to take required and necessary steps to facilitate visitation between the father and his children. Thus, sanctions are imposed to demonstrate that recalcitrant behavior will not be tolerated. The remedies ordered herewith, inclusive of additional sanctions to be imposed, if defendant does not change her course, are crafted to make defendant understand that her economic self-interest requires compliance with the court's order. At such time as defendant complies, no further sanctions will be imposed.
There is no question in the context of a matrimonial action that a court has the authority to order the incarceration of a spouse or former spouse who has been found in violation of litigant's rights. R. 1:10-3; see Sgambati v. Sgambati, 242 N.J. Super. 688, 692-93, 577 A.2d 1328 (Ch.Div. 1990) (citing Brown v. Brown, 19 N.J. Super. 432, 88 A.2d 651 (Ch.Div. 1952)); Lathrop v. Lathrop, 57 N.J. Super. 532, 538, 155 A.2d 106 (App.Div. 1959); Federbush v. Federbush, 5 N.J. Super. 107, 68 A.2d 473 (App.Div. 1949). However, the purpose of incarceration, in this context, is not punitive, but rather an attempt to coerce the offending litigant to honor the court's order. Sgambati, supra, 242 N.J. Super. at 693-94, 577 A.2d 1328. Given the facts underlying this case, incarceration of defendant is unlikely to lead to satisfaction on her part of the obligations imposed by court orders. That is, plaintiff resides in Germany and compliance with the court's order will ultimately require that the three children visit with their father. At this present time, since the children refused the opportunity to travel to Germany over a three week time period, there are no arrangements in place as to a flight, accommodations, etc., for the *159 children. In the absence of such arrangements, defendant does not have the ability to now comply with the court's order. Clearly, therefore, incarceration of defendant is not appropriate as it would be punitive in nature and, therefore, inappropriate in the context of this family court action. See Biddle v. Biddle, 150 N.J. Super. 185, 191, 375 A.2d 285 (Ch.Div. 1977). Consequently, plaintiff's application to incarcerate defendant is denied.
Plaintiff, as noted, requests an immediate order terminating his obligation to pay child support for Michael and for the termination of his obligation as the youngest children reach their eighteenth birthday. The court does not have the authority to grant such an order. Newburgh v. Arrigo, 88 N.J. 529, 542-43, 443 A.2d 1031 (1982); see also Weitzman v. Weitzman, 228 N.J. Super. 346, 356, 549 A.2d 888 (App.Div. 1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989). It must be understood, none of the children are emancipated.
Courts, from time to time, have spoken of termination of child support payments in circumstances where visitation has been improperly frustrated by the custodial parent. Smith v. Smith, 85 N.J. Super. 462, 467, 205 A.2d 83 (Cty.Ct. 1964); Daly, supra, 39 N.J. Super. at 125, 120 A.2d 510 (citing Feinberg v. Feinberg, 72 N.J. Eq. 810, 66 A. 610 (Ch.Div. 1907); see also Fiore v. Fiore, 49 N.J. Super. 219, 228, 139 A.2d 414 (App.Div. 1958) (opining that neither parent should be permitted to interfere with the other parent's right to love or know their children). Indeed, the Appellate Division has approved a sizeable reduction in arrears accumulated as a result of non-payment of child support upon a finding that visitation had been unfairly and improperly denied. Brennan v. Brennan, 187 N.J. Super. 351, 357, 454 A.2d 901 (App.Div. 1982).
However, at this time, it clearly appears that such rulings are at variance with the law and established public policy. The Legislature, recognizing the need for financial stability, has determined that trial courts may not retroactively modify child support payments. See N.J.S.A. 2A:17-56.23a. Surely the Legislature recognized that such prohibition in a given case might work a hardship *160 upon the non-custodial parent. But, recognizing their tender years and need for support, both the federal and state governments have determined that the needs of children must be paramount. See 42 U.S.C.A. § 3796cc (allocating federal grants to the states and local entities to develop and implement criminal interstate child support legislation); N.J.S.A. 2A:34-23 (enumerating the statutory criteria for establishing a child support order). Parental non-support has, in recent years, become a national problem of such proportions that the Congress adopted the Child Support Recovery Act of 1992, 18 U.S.C.A. § 228; see also 28 Weekly Comp.Pres.Doc. 2122 (Nov. 2, 1992). It is now a federal crime for a non-custodial parent residing in another state to fail to pay child support in accordance with valid orders. In keeping with such legislative findings, courts have ruled in a variety of circumstances that the termination or drastic reduction in child support is contrary to public policy. Mallamo v. Mallamo, 280 N.J. Super. 8, 13, 654 A.2d 474 (App.Div. 1995); see also, N.J.S.A. 2A:17-56.23a. Thus, it has been emphasized time and time again that visitation and the obligation to pay child support are not interdependent. See In re Adoption of Two Children by J.J.P., 175 N.J. Super. 420, 430, 419 A.2d 1135 (App.Div. 1980); Kaplan v. Kaplan, 214 N.J. Super. 210, 219, 518 A.2d 781 (Ch.Div. 1986). Our courts now recognize that the right to child support belongs to the child and not the custodial parent. Pascale v. Pascale, 140 N.J. 583, 591, 660 A.2d 485 (1995). Therefore, the misdeeds of the custodial parent should not be visited upon the child. See Ross v. McNasby, 259 N.J. Super. 410, 414, 613 A.2d 1174 (App.Div. 1992). Even the waiver of child support by the custodial parent does not preclude or, indeed, limit the non-custodial parent's obligation to his children. Martinetti v. Hickman, 261 N.J. Super. 508, 512, 619 A.2d 599 (App.Div. 1993).
While in the eyes of plaintiff and, indeed, in the court's mind, the children are presently acting in an inappropriate manner, it is defendant, and not the children, who has violated a court order. Consequently, it is defendant, and not the children, who must bear the brunt of the sanctions to be imposed to aid litigant's rights.
*161 A trial court has the authority to impose a sanction that might "sting" the recalcitrant litigant, but such sanction must be reasonable and designed so that the relief granted in the various underling orders might be accomplished. Board of Educ. v. Educ. Ass'n, 235 N.J. Super. 417, 420-21, 563 A.2d 55 (App.Div. 1989).
Given plaintiff's residence in Germany, and recognizing the role defendant has played in the development of the attitude now held by the three children regarding their father, a guardian ad litem shall be appointed to represent the children's interests. The guardian ad litem shall work towards re-establishment of a relationship between plaintiff and the three children ultimately leading to a visit of not less than three weeks by the children with their father. In that respect, the guardian ad litem is given authority to meet with and interview defendant and the three children, when and as often as he finds necessary, to monitor the steps taken by defendant to encourage the children to re-establish contact with their father. Since a therapist is now involved with the children, the guardian ad litem is given authority to communicate with such therapist, and advise it of the court's findings and ruling herein. Defendant is entirely responsible for the guardian's fees and shall make monthly payments so that the bill is kept current. The guardian shall submit a monthly statement to defendant itemizing the time spent and the hourly rate charged.
So that the children will have an opportunity to re-establish a relationship with their father, there must be contact between them and plaintiff. Therefore, defendant is charged with the responsibility of seeing to it that the children correspond with and telephone their father as set forth herein. While certainly the court cannot order the children to love their father or, indeed, even respect him, defendant can be directed to take all required and necessary steps so that the children correspond with their father at the rate of one letter each week, per child, and one call each week. As plaintiff responds to the children's letters, defendant must see to it that the children address each point raised by plaintiff in their correspondence of the following week. Defendant *162 is directed to provide proof to the guardian ad litem each month that the phone calls were made and letters drafted and mailed to plaintiff. Defendant's phone bill shall constitute evidence corroborating that phone calls were placed to plaintiff. The guardian, thereafter, on a monthly basis, shall correspond with plaintiff to verify the letters were sent and phone calls received. Defendant's failure to take these necessary steps shall subject her to further proceedings upon the application of plaintiff or his representative. The guardian ad litem is to submit a written report to the court at three-month intervals concerning the status of the case.
Defendant now works as a school nurse earning the sum of $56,650 per year. As a result of defendant's wilful violation of plaintiff's rights, a monetary sanction of $1,250 is imposed, to be paid by defendant within thirty days through the Monmouth County Probation Department, for subsequent delivery to plaintiff. Further, defendant shall reimburse plaintiff in full for his counsel fees and costs in the sum of $5,249.34 over a term of one year in equal monthly payments, commencing on February 26, 1996, and continuing on the twenty-sixth day of each month thereafter until the full sum is paid. Defendant's failure to comply with the sanctions imposed herein may result in the imposition of further sanctions upon appropriate application.