196 N.J. Super. 385 (1984)
482 A.2d 958
SOPHIA KAVRAKIS, PLAINTIFF,
v.
JOHN KAVRAKIS, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Bergen County.
Decided August 31, 1984.
*387 Richard Greenberg for plaintiff.
Louis Serterides for defendant.
KRAFTE, J.S.C.
If a child is of suitable age to signify consent to residential removal from the State of New Jersey with one "divorced or separated" parent, and does in fact signify such consent, does this Court have the authority to prohibit such removal at the behest of the remaining parent? No reported cases have been found in New Jersey, nor in any other jurisdiction which have addressed this particular aspect of the so-called "Anti-Removal" statute, N.J.S.A. 9:2-2.
In custody matters, courts are faced with the task of achieving the proper balance between the competing interests of the children, mother and father. To insure such a balance, and among other things, New Jersey's policy concerning the removal of minor children of divorced or separated parents from this State is provided in N.J.S.A. 9:2-2, which reads as follows:
When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same, nor while under that age without consent of both parents, unless the court, upon cause shown, shall otherwise order. *388 The court, upon application of any person in behalf of such minors, may require such security and issue such writs and processes are shall be deemed proper to effect the purposes of this section. [Emphasis supplied].
In the case at bar, the issue presented deals specifically with the emphasized language, "... they (the children) shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same...."
The facts presented are as follows:
Plaintiff-wife filed a motion for pendente lite support and maintenance for herself and the two minor children born of the marriage, Emmanuel, 15, and George, 14. Plaintiff claimed that on or about February 12, 1984, she was forced to leave the State of New Jersey because of the continual mental and physical abuse received from defendant. Since the plaintiff has no family in New Jersey, she claims it was necessary for her and the children to move to Salt Lake City, Utah, where she moved into her parents' two family home. This was a unilateral action, done without defendant's consent or court order. Plaintiff, subsequently, made application for pendente lite relief and by order dated May 29, 1984, this Court concluded that plaintiff had, at first blush, apparently violated the provisions of N.J.S.A. 9:2-2 in such unilateral removal of the children from this jurisdiction. Plaintiff's request for alimony was denied. Child support was ordered at $30.00 per week per child, said payment to be made through the Bergen County Probation Department in a "hold account" subject to further order of this Court. See Daly v. Daly, 21 N.J. 599 (1956); Parivash v. Yousef, 89 N.J. Super. 133 (Ch.Div. 1965).
Plaintiff has now filed a second motion returnable June 15, 1984, requesting that all child support payments be released and disbursed directly to plaintiff.
On June 29, 1984, by virtue of a telephone conference call between this Court and the parties' attorneys, it was agreed that the child support payments would be released without prejudice and disbursed to plaintiff until the matter was argued *389 orally, and until the further order of this Court. Such oral argument was held.
In considering the removal of children from this jurisdiction, the court usually is obligated to apply the principles set forth in D'Onofrio v. D'Onofrio, 144 N.J. Super. 200 (Ch.Div. 1976), affirmed o.b. 144 N.J. Super. 352 (App.Div. 1976); Middlekauff v. Middlekauff, 161 N.J. Super. 84 (App.Div. 1978); and Helentjaris v. Sudano, 194 N.J. Super. 220 (App.Div. 1984). However, in the cited cases, the presenting problem was, basically, whether court permission should be afforded to the "removing" parents, with no court considering the quoted language of N.J.S.A. 9:2-2 above.
Plaintiff submits two notarized affidavits from the children. Both affidavits are identical and read as follows:
I, ____, age ____, willfully and freelingly left New Jersey to go out of state on my own accord with my Mother due to the violence and extreme cruelty between my parents.
S/ __________________________________________
Also forwarded to the Court were copies of the children's recent report cards, which illustrated how well the children are doing and how they have adjusted to a different lifestyle. Plaintiff claims that the children's grades have greatly improved and that the oldest child made the scholarship honor roll for the last quarter.
This Court is now called upon to interpret the said quoted section and to determine legislative intent. As an aid in determining what constitutes "suitable age", legislative history was sought but, unfortunately, none exists. The Court in Meredith v. Mercer Cty. Freeholder Bd., 117 N.J. Super. 379 (Law Div. 1970), affirmed 117 N.J. Super. 368 (App.Div. 1971), affirmed 59 N.J. 530 (1971) held that:
When the Court does not have available to it reasons or intentions of the Legislature when adopting a specific piece of legislation, the Court must derive the intent of Legislature from a view of the whole and of every part of the statute to make sense out of the legislation.
In reviewing N.J.S.A. 9:2-2, as a whole, this Court must initially determine whether the language used by the Legislature, *390 "... of suitable age to signify" consent ..., is clear on its face or whether this Court must interpret it.
A studied examination of the statute leads to the inescapable conclusion that the legislative language is perfectly clear. It means exactly what it says.
The words "of sufficient age to signify same" (consent to removal) clearly and unequivocally contemplate a child with the maturity and capacity to reason and to arrive at an intelligent decision; a child who has attained such age coupled with such emotional and mental development as to appreciate the attendant circumstances and the full consequences of such move.
When a statute is clear and unambiguous, it is not open to construction or interpretation. See Watt v. Boro. of Franklin, 21 N.J. 274 (1956). The New Jersey Supreme Court later expanded this principle in State v. Butler, 89 N.J. 220 (1982), holding that:
As a general rule of statutory construction the Supreme Court looks first to the language of the statute and, if the statute is clear and unambiguous on its face and admits of only one interpretation, the court need delve no deeper than the act's literal terms to devine the Legislature's intent.
As long as N.J.S.A. 9:2-2 is clear and unambiguous on its face, this Court cannot make such a determination which would be in contravention of this legislative fiat.
It is not the province of the courts to determine what the law should be, only what it is. The courts are obligated to uphold the law as given by the Legislature, such law being the stated public policy of this state, given that the law is constitutional, clear and unambiguous, "... notwithstanding a different result might appear to the court more reasonable, logical, conventional or desirable." Meredith v. Mercer Cty. Freeholder Bd., supra, 369.
In determining the Legislature's intent as to what it considered to be "of suitable age", N.J.S.A. 2C:13-4(a)(2), gives us some direction stating:
2C:13-4 Interference with custody.

*391 a. Custody of children. A person commits an offense if he knowingly takes or entices any child under the age of 18 from the custody of the parent, guardian or other lawful custodian of the child, when he has no privilege to do so, or he does so in violation of a court order. It is an affirmative defense that: (a) The child, being at the time not less than 14 years old, was taken away at his own volition and without purpose to commit a criminal offense with or against the child. (Underscoring provided.)
Proof that the child was below the critical age gives use to a presumption that the actor knew the child's age....
Correlating this expression with N.J.S.A. 9:2-2, this Court finds it to be clear that the Legislature intended the applicable age in the expression, "of suitable age", to be 14 years, as a chronological, prima facie starting point.
This Court finds that if a child expresses his/her consent to leave the State of New Jersey, being of suitable age, he/she may leave without a D'Onofrio hearing. The Kavrakis boys have expressed such a desire in their affidavits. If the children are old enough to consent to leave, does this Court or the non-custodial parent, have the authority under this statute to say otherwise? Standing alone, this Court finds it lacks such authority.
However, as with all matters involving consent, it must be informed, voluntarily given, and without duress or coercion. In this matter, the defendant-husband has particularly raised the spectre of coercion. Certainly, if the boys were actually coerced into consenting, there would be no consent in fact or in law.
A factual dispute has arisen between the parties on a key, material aspect of this controversy. Affidavits merely raise the issue and do not decide it. While an in camera interview will not be necessary in every case, and while a plenary hearing will not always be mandated, this Court finds that when "voluntariness" is seriously disputed, these tools must be availed of by the court to determine the truth. This is so even if it requires the departing children and spouse to return to New Jersey.
*392 To summarize, a court, faced with such removal, must make three inquiries:
1. Is the child of suitable age to signify consent to removal?
2. Was the consent "informed"?
3. Was the consent voluntary, i.e., without duress or coercion?
Where there is a genuine issue as to one or all of these questions, the court must conduct an in camera interview and hold a plenary hearing. At the conclusion thereof, if the court determines all questions in the child's favor, then the child has the legislatively-given right to remove from this State without the consent of the remaining parent, without the necessity of a D'Onofrio hearing, and without the consent of the Court.
Plaintiff shall submit an order scheduling such plenary hearing. Until such hearing is held, the children may remain in Utah and child support payments shall continue to be paid to plaintiff.