16 A.3d 479 (2010)
419 N.J. Super. 205
James McKINLEY, Plaintiff,
v.
Lee NATERS, Defendant.
No. FM-15-1692-06N
Superior Court of New Jersey, Chancery Division, Ocean County, Family Part.
Decided June 25, 2010.
*480 Vincent L. Stripto, Red Bank, for plaintiff (Drazin & Warshaw, attorneys).
Lee Naters, defendant pro se.
L.R. JONES, J.S.C.
This case presents the following pre-trial issue in removal litigation: should the court grant a contested application for a temporary removal of a child to another state for "extended vacation purposes" prior to a formal relocation hearing?
For the reasons set forth below, the court concludes the following:
a) The court will permit the pre-trial, temporary removal of a child to another state for "extended vacation purposes", particularly since the child is of advanced age and if such temporary removal will provide a reasonable opportunity for the child to experience living in the proposed new state prior to trial;
b) Additional factors the court has considered on such application include whether the temporary removal will interfere with the child's present schooling; whether the party seeking the removal has any history of violating court orders or otherwise demonstrating a flight risk; and whether the other party will also have an equitable opportunity for the child to take an "extended vacation" in that party's temporary care pending trial.
Plaintiff and defendant divorced on December 10, 2002. Pursuant to the parties' settlement agreement, they agreed to share residential custody of their sole child (hereinafter referred to as "H.M.").
On May 7, 2010, defendant filed a motion seeking to permanently relocate to Florida with H.M. Defendant asserted that she and her present husband wished to relocate to Florida for employment reasons. Additionally, defendant alleged that H.M. would have greater educational opportunities in Florida, and would enjoy life in Florida more than in New Jersey. Plaintiff opposed the application and filed a cross-motion seeking residential custody.
The court set the matter down for a plenary hearing to take place approximately three months thereafter, on August 16, *481 2010. In the interim, the parties were permitted a forty-five day period for mediation and discovery. The court further appointed an expert psychologist to perform a custody evaluation.
On June 22, 2010, in the midst of pretrial litigation, defendant filed an application seeking permission to temporarily remove H.M. from New Jersey to Florida. Specifically, defendant alleged that she wished to take H.M. for four weeks to Florida for extended vacation purposes, as well as for H.M. to obtain "a feel for our new neighborhood" in Florida.
Plaintiff opposed the application in that he did not consent to defendant removing H.M. across New Jersey state lines.
Each party took the position that the other party was attempting to unduly obtain an advantage for the upcoming plenary hearing. Plaintiff asserted that defendant was attempting to monopolize the time with the child by keeping H.M. in her care and in the State of Florida until just before the hearing date. Reciprocally, defendant alleged that plaintiff was attempting to prohibit the child from spending any time with defendant in Florida so that he would be less inclined to want to relocate there.
Accordingly, the court must decide (a) whether to allow defendant to temporarily remove H.M. to Florida and (b) if so, under what conditions.
The court will grant defendant's application for a pre-trial, temporary removal of H.M. to Florida for a reduced, two-week "extended vacation". Further, the court directs that immediately thereafter, H.M. will spend two weeks of "extended vacation" with plaintiff in New Jersey. The court finds under the facts of this case, it is logical and appropriate for H.M., nearly fifteen years old, to have a reasonable opportunity to experience life in both defendant's care in Florida, as well as in plaintiff's care in New Jersey, prior to trial.
Based upon his age, H.M. will be permitted at trial via in camera interview to state his position on a proposed permanent relocation to Florida. R. 5:8-6. As such, it is logical for him to personally experience life in his mother's primary care in Florida and life in his father's primary care in New Jersey prior to testifying. H.M. should have the chance to formulate opinions based on more than speculation.
Pursuant to N.J.S.A. 9:2-2, when the Superior Court has jurisdiction over the custody of a child of divorced parents, and such child is a native of New Jersey, or has resided five years within its limits, the child shall not be removed out of its jurisdiction against the child's own consent, if of suitable age to signify same and/or without court order. Accordingly, due to H.M.'s age, the issue of his consent is relevant to the disposition of this case.
In Kavrakis v. Kavrakis, 196 N.J.Super. 385, 391, 482 A.2d 958 (Ch.Div.1984), the court found that the Legislature intended "a suitable age" to be fourteen years, as a chronological, prima facie starting point. The court further found that even if a child over fourteen consents to relocation, issues before the court may include an analysis of whether such consent was informed. Id. at 392, 482 A.2d 958.
In the subsequent landmark case of Baures v. Lewis, 167 N.J. 91, 770 A.2d 214 (2001), the New Jersey Supreme Court set forth criteria for consideration of a removal application. One of the express factors set forth was the preference of a child of suitable age.
Thereafter, in O'Connor v. O'Connor, 349 N.J.Super. 381, 793 A.2d 810 (App.Div. 2002), the Appellate Division held that a removal application between two shared *482 residential custodians may be analyzed as an application for a change of custody. In such circumstances, the custody criteria set forth in N.J.S.A. 9:2-4 is applicable. One of the express statutory elements in a custody analysis under N.J.S.A. 9:2-4 is the preference of the child when of a sufficient age and capacity to reason so as to form an intelligent decision.
In this case, H.M. has already achieved his fourteenth birthday. Further, the parties are presently court-ordered joint residential custodians. Accordingly, under every reasonable analysis of statutory law and case law including N.J.S.A. 9:2-2, N.J.S.A. 9:2-4, Baures, O'Connor, and Kavrakis, H.M.'s input on the proposed removal is relevant to the disposition of the removal application. The court therefore finds that since H.M. is of sufficient advanced age and capacity to reason, it will be helpful for him to have an opportunity to experience each proposed residence on a firsthand basis.
The court further finds that an order permitting H.M. to spend time in Florida during part of the summer vacation, prior to trial and over plaintiffs objection, does not in any fashion offend the anti-removal policy considerations of N.J.S.A. 9:2-2. Indeed, the term "removal" in N.J.S.A. 9:2-2 does not prohibit temporary departures from the jurisdiction for legitimate purposes, particularly under court order. See Comas v. Comas, 257 N.J.Super. 585, 590, 608 A.2d 1005 (Ch.Div.1992) (child temporarily leaving New Jersey for visitation purposes with another parent does not violate the anti-removal statute).
The trial in this matter is scheduled to take place approximately four weeks from the date of this decision. It is inappropriate to permit either parent to monopolize all of the child's time prior to trial. Such monopolization would impair H.M.'s ability to spend quality time with each parent in each environment to assist him in hopefully reaching a reasoned, mature, and intelligent opinion as to where he wishes to reside. While ultimately the issue of relocation will be decided by a court, and while the child's preference remains only one of several factors for the court's consideration, it is a potentially important factor nonetheless.
Defendant shall be permitted to spend two weeks with H.M. in Florida. Thereafter, defendant will return the child from Florida to New Jersey and the child will spend two weeks in New Jersey with plaintiff. During H.M.'s two weeks with his mother in Florida, he will have the opportunity to experience the Floridian home, as well as see the surrounding area and the schools where he would be attending if the relocation takes place. Conversely, H.M. will also have the time to spend in New Jersey under plaintiffs primary care.
In reaching this decision, the court has considered other important factors as well. First, the extended time will take place during the summer months when school is not in session. Accordingly H.M.'s ongoing formal education will not in any way be impaired or compromised by a temporary pre-trial removal to Florida.
Second, there is no objective evidence of any kind that either party has ever attempted to obstruct the other party's parenting time. Nor is there any history suggesting that defendant is a flight risk or that defendant will not return H.M. to New Jersey at the conclusion of the two week temporary removal period. It is noted that in the eight years since the parties' divorce, neither party filed any applications with the court alleging obstruction of parenting time or violations of court orders.
*483 Facts, not principles of law, decide cases. Bendix Corp. v. Dir., Div. of Taxation, 125 N.J. 20, 41, 592 A.2d 536 (1991). If the facts of this case differed to the extent that a) H.M. were much younger, or b) school were still in session, or c) defendant had a history of obstructing plaintiffs parenting time or violating court orders, or d) there was any objectively reasonable evidence of a flight risk, the court may well have denied H.M.'s temporary removal to Florida. Additionally, the fact that plaintiff will have a reciprocal, equitable opportunity for pre-trial extended parenting time in New Jersey is an important factor in this analysis.
Pursuant to the Uniform Child Custody Jurisdiction Enforcement Act, N.J.S.A. 2A:34-53 to 95 ("UCCJEA"), New Jersey remains H.M.'s home state, and continues to exercise sole and exclusive jurisdiction over H.M. pending the conclusion of the removal litigation.