J-E04008-14

2015 PA Super 176

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SHAWN LAMAR BURTON, | |
| Appellant | No. 1459 WDA 2013 |

Appeal from the PCRA Order August 27, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CR-02-CR-0004017-1993
and CP-02-CR-0004276-1993

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA, DONOHUE, SHOGAN, MUNDY, OLSON AND OTT, JJ.

DISSENTING OPINION BY OLSON, J.: **FILED AUGUST 25, 2015**

I respectfully dissent.  The learned Majority holds that the trial court's order denying collateral relief must be vacated and that this case should be remanded for an evidentiary hearing on whether Appellant properly invoked the newly-discovered facts exception to the one-year time bar under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.[1]  To reach

_____

[1] The Majority concludes that Appellant properly invoked the newly-discovered facts exception and foregoes consideration of Appellant's alternate claim that he validly asserted the governmental interference exception.  **See** Majority Opinion at 4, n.1.  As I believe that Appellant failed to plead and prove that the newly-discovered facts exception applies, I would address Appellant's government interference claim and hold that it is meritless.
*(Footnote Continued Next Page)*

this result, the Majority holds that all *pro se* petitioners are exempt from the "public records" rule, which presumes that a petition invoking the newly-discovered facts exception to the PCRA's one-year time bar must be filed within 60 days of the date that the information entered the public domain. This reinterpretation of our Supreme Court's long-standing public information doctrine is unwarranted. The Majority's subjective, status-based approach to assessing due diligence wrongly classifies petitioners, like Appellant, according to who they are, while at the same time fails to consider what they do to acquire supposedly new facts. In addition, the Majority's new approach improperly shifts the burdens of pleading and proof

*(Footnote Continued)* ――――――――――――

Appellant's governmental interference claim asserts that the contents of Melvin Goodwine's expungement motion constitutes exculpatory evidence that the Commonwealth improperly withheld from him in violation of ***Brady v. Maryland***, 373 U.S. 83 (1963). Appellant, however, does not contend that the Commonwealth had exclusive control over the information found in Goodwine's motion papers or that the Commonwealth denied him access to this information until recently. Moreover, since Goodwine filed his motion with the Allegheny County Department of Court Records, it was equally available to Appellant and the Commonwealth once it entered the public domain. Consequently, Appellant cannot establish that interference by governmental officials frustrated any previous effort to assert a claim for collateral relief. *See **Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1268 (Pa. 2008) (although ***Brady*** violation may fall within governmental interference exception, petitioner still must plead and prove that his failure to previously raise the claim was the result of interference by government officials); ***Commonwealth v. Chester***, 895 A.2d 520, 523-524 (Pa. 2006). Because, in my view, Appellant's petition is untimely and no exception applies, I conclude that the PCRA court correctly declined to review the substantive merit of Appellant's collateral claims.

- 2 -

on collateral review to the Commonwealth, without interpretive guidance as to how any recently recognized "subjective considerations" factor into the due diligence inquiry. Lastly, as I shall explain below, the circumstances of this case were more than sufficient to trigger an investigation by Appellant. Thus, I believe that the Majority's broad, unprecedented, and unworkable exception to settled Supreme Court precedent constitutes a sharp and improper departure from settled law. For each of these reasons, I would affirm the denial of collateral relief in this case since I believe that prevailing Pennsylvania precedent firmly supports the PCRA court's dismissal order.

I begin with a review of the PCRA court's determinations and the undisputed legal principles that govern this case. The PCRA court rejected the claim that the contents of Goodwine's motion were unknown to Appellant. **See** PCRA Court Opinion, 11/4/13, at 5. In addition, the court rejected Appellant's argument that his May 2013 receipt of the Pennsylvania Innocence Project's letter triggered the 60-day period referenced in § 9545(b)(2). **Id.** Instead, the court concluded that the 2009 filing of Goodwine's motion, and its concomitant entry into the public domain, triggered § 9545(b)(2)'s 60-day period governing the time within which a petition invoking a timeliness exception must be submitted. **See id.** ("Given the specific facts and circumstances of this case, there is no reasonable argument that the purported exculpatory evidence contained in Goodwine's [m]otion could not have been discovered at least by 2009 if not earlier.").

The Commonwealth defends this conclusion, pointing out that facts which are a matter of public record may not be considered "unknown" for purposes of the newly-discovered facts exception to the PCRA's time-bar. *See* Commonwealth's Brief at 15 and 21. In my view, the PCRA court's legal conclusions, and the Commonwealth's position on appeal, find ample support within our appellate case law.

To succeed in pleading and proving a timeliness exception under § 9545(b)(1)(ii),[2] Appellant must demonstrate that "the facts upon which [his] claim is predicated were **unknown** to [him] and could not have been

_____

[2] Because Appellant's petition is manifestly untimely, it is subject to dismissal unless Appellant pleads and proves one of the following three statutory exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Additionally, any petition invoking an exception provided in 42 Pa.C.S. § 9545(b)(1) must be filed within 60 days of the date that the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

ascertained by the **exercise of due diligence**." 42 Pa.C.S.A. § 9545(b)(1)(ii) (emphasis added). "**Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned of the new fact(s) earlier with the exercise of due diligence**. This rule is strictly enforced." *Commonwealth v. Williams*, 35 A.3d 44, 53 (Pa. Super. 2011) (citations omitted) (emphasis added), *appeal denied*, 50 A.3d 121 (Pa. 2012). Moreover, a petitioner seeking to invoke an exception set forth in 42 Pa.C.S.A. § 9545(b)(1) must file his petition within 60 days of the date that the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2). "[T]he 60–day rule requires a petitioner to plead and prove that the information on which he relies could not have been obtained earlier, despite the exercise of due diligence." *Commonwealth v. Williams*, 105 A.3d 1234, 1239-1240 (Pa. 2014). Because the PCRA's jurisdictional time limits go to a court's competency to adjudicate a controversy, the statute "confers no authority upon [courts] to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." *Commonwealth v. Hackett*, 956 A.2d 978, 983-984 (Pa. 2008).

Where a petitioner relies on public information to establish the newly-discovered facts exception found in § 9545(b)(1)(ii), appellate courts within this Commonwealth have repeatedly and consistently held that he must file his petition within 60 days from the emergence of a "fact" into the

public domain. ***Commonwealth v. Taylor***, 67 A.3d 1245, 1249 (Pa. 2013) (information reflecting potential conflict of interest on the part of defense counsel was on file with clerk of courts ten years before defendant was convicted and 27 years before relevant PCRA petition was filed; therefore, information was publicly available and newly-discovered facts exception did not apply); ***Commonwealth v. Lopez***, 51 A.3d 195, 198 (Pa. 2012) (*per curiam*) (information related to defense counsel's disciplinary issues was publicly available seven years before defendant's trial and 23 years before second PCRA petition; thus, newly-discovered facts exception did not apply); ***Chester***, 895 A.2d at 523 (trial counsel's arrest for driving under the influence was a matter of public record ten years before defendant's second petition and, therefore, not "unknown" for purposes of newly-discovered facts exception); ***Commonwealth v. Feliciano***, 69 A.3d 1270, 1278 (Pa. Super. 2013) (noting, by way of alternate holding, that information relating to suspension of trial counsel's license to practice law did not constitute a newly-discovered fact since information was publicly available 11 years before defendant filed PCRA petition).

This line of cases establishes beyond doubt that "matters of public record [such as docketed trial court filings] **are not unknown**" and thus "[do] not meet the requirement [that] the information be unknown at the time the petition was filed" for purposes of the newly-discovered facts exception. ***See e.g. Taylor***, 67 A.3d 1248-1249 (emphasis added). Thus,

where public information is cited as the basis for invoking § 9545(1)(ii), our Supreme Court's objective interpretation of the newly-discovered facts exception leaves no room for concepts of relaxed vigilance or diminished diligence, even if long periods have elapsed between public disclosure and conviction, direct appeal, or a petition for collateral relief. Indeed, because a PCRA petitioner carries the burden to plead and prove that a timeliness exception applies, a fair reading of the case law clearly requires a petitioner to comb, regularly and routinely, through public sources in order to locate potentially exculpatory materials and come forward with a detailed explanation as to why an untimely request for collateral relief should be addressed. *See Williams*, 35 A.3d at 53 (espousing strict enforcement of the petitioner's duty to employ due diligence to protect his interests and requiring explanation as to why new facts could not have been uncovered earlier).[3]

_____

[3] The Majority's opinion attempts to sidestep this binding precedent by suggesting that "th[is] rule is not absolute" and that "[i]t must adhere to the statutory language of Section 9545[, which requires that the facts be] 'unknown *to the petitioner*.'" Majority Opinion at 15 (emphasis in original), *quoting* 42 Pa.C.S.A. § 9545(b)(1)(ii). The suggestion that our Supreme Court's unambiguous declarations somehow excluded PCRA petitioners does not withstand scrutiny. As even the learned Majority acknowledges, *Taylor* squarely held that "matters of public record are not unknown." Majority Opinion at 15, *quoting Taylor*, 67 A.3d at 1248. I submit that this clear and unequivocal holding means that public records are not unknown to anyone, particularly PCRA petitioners (*pro se* and represented alike). To whom, apart from PCRA petitioners such as Appellant, could the Supreme Court have been referring in formulating this rule? Rather than applying the
*(Footnote Continued Next Page)*

The undisputed facts in this case lead inexorably to the conclusion that Appellant failed to invoke the newly-discovered facts exception. Goodwine filed his expungement motion with the Allegheny County Department of Court Records in 2009. Four years passed before Appellant filed the instant PCRA petition on July 11, 2013. Appellant nowhere specifies what steps he took to uncover any newly-discovered facts. Hence, Appellant's failure to file his petition within 60 days of the date that the alleged exculpatory material entered the public sphere defeats his attempt to invoke the exception found at § 9545(b)(1)(ii).

The Majority does not, and cannot, dispute these uncontested facts. Indeed, the Majority acknowledges that Appellant's claim appears to conflict with traditional applications of the Supreme Court's public records rule. **See** Majority Opinion at 14. Instead of applying well-settled precedent, however, the Majority formulates an exception for *pro se* petitioners that threatens to swallow this deeply rooted principle. To invoke the exception found at § 9545(b)(1)(ii), the Majority first points out that due diligence "is

_(Footnote Continued)_ ——————————————

established rule in this case, the Majority carves out an exception for *pro se* petitioners in all cases going forward, reasoning that a subjective component is part and parcel of the standard of diligence. Nevertheless, the "subjective element" that the Majority injects into our due diligence inquiry, which it amorphously describes as "easily accommodated by a reasonableness analysis, but not accurately reflected by a bright line rule" (Majority Opinion at 15), represents a clear departure from settled PCRA jurisprudence that has consistently espoused objective criteria when interpreting § 9545(b)(1)(ii).

fact-sensitive and dependent upon the circumstances." Majority Opinion at 12. The Majority reasons that, in assessing Appellant's diligence, we must consider several factors, including the passage of time between the finality of Appellant's judgment of sentence and the filing of Goodwine's motion, Appellant's incarcerated and *pro se* status, and the contention that Appellant had no reason to initiate a search for exculpatory evidence. In the Majority's view, *pro se* petitioners occupy a special position and are now exempt **in all cases** from our Supreme Court's public records rule since they "do[] not have access to information otherwise available to the public" and lack the connection to public documents that retained or appointed counsel could provide. *Id.* at 16. The Majority concludes that, because *pro se* prisoners are no longer members of the public, "the presumption of access to information in the public domain does not apply where the untimely PCRA petitioner is *pro se*." *Id.* at 17-18. Applying this newly-minted standard, the Majority finds that Appellant may have exercised due diligence. *Id.* at 18.

For several reasons, I am unable to agree with this approach. As a preliminary matter, under Pennsylvania Rule of Criminal Procedure 907, the PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings."

Pa.R.Crim.P. 907(1). To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. **Commonwealth v. Paddy**, 15 A.3d 431, 442-443 (Pa. 2011).

The law is clear that "[t]he timeliness exception set forth in [§] 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence." **Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa. Super. 2015). We strictly enforce the principle that "[a] petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence." **Id.** Here, apart from receiving the letter from the Pennsylvania Innocence Project, Appellant has not alleged any steps he took to uncover Goodwine's expungement motion. As such, Appellant **never** explained why he could not have previously discovered the new facts with the exercise of due diligence. Accordingly, Appellant failed to raise a genuine issue of fact that would entitle him to a hearing and his petition was subject to summary denial.

In vacating the PCRA court's dismissal order, the Majority effectively jettisons the requirement to plead and prove a diligent inquiry, insofar as the rule applies to *pro se* petitioners. Although the Majority declares its preference for a comprehensive and fact-specific approach to assessing due

diligence, the Majority confines its analysis to a status-based examination. In other words, the Majority exempts Appellant from the public records doctrine based solely upon his *pro se* status, not what he did to uncover any allegedly unknown facts. Appellant's incarcerated and *pro se* status by itself, however, offers no probative assessment of Appellant's effort to discover the "new" information on which he now relies. Indeed, Appellant's incarcerated and *pro se* status hardly distinguishes the present case from any other in which an untimely petition asserts a timeliness exception. Nearly every petitioner who invokes the exception found at § 9545(b)(1)(ii) in order to litigate an untimely petition will be incarcerated. This is because serving a sentence is a prerequisite for eligibility for collateral relief. 42 Pa.C.S.A. § 9543(a)(1)(i). In addition, an overwhelming number of such petitioners will also be acting *pro se* since they are no longer eligible for appointed counsel. **See** Pa.R.Crim.P. 904(c) and cmt. Hence, the factors cited by the Majority do not meaningfully distinguish the present case from any other in which the newly-discovered facts exception is invoked, much less counter the undisputed conclusion that Appellant did **nothing** for four years while Goodwine's motion lingered in the public domain. It is difficult to conceive of a petition more deficient in pleading due diligence than the one filed in this case. Therefore, going forward, there is every reason to believe that all *pro se* petitioners who invoke the after-discovered facts exception based on public information will be entitled to a hearing on their

claims since comprehensive fact-finding, tailored to suit the *pro se* petitioner's particular circumstances, is now required.

Second, the basis of the Majority's blanket conclusion that all *pro se* petitioners lack access to public records rests on unsubstantiated assumptions.[4] Although the Majority criticizes the PCRA court for making determinations in a vacuum, the Majority's due diligence analysis is similarly flawed. The Majority observes that while "public records [are] presumptively knowable," this assumption does not hold for *pro se* petitioners who are often incarcerated because they are no longer members of the public. Majority Opinion at 16. Here, the Majority infers, without support, that all *pro se* prisoners are entirely isolated and have no access to publicly available information. But, the Majority makes **no** effort to ascertain what resources, contacts, and capabilities are available to Appellant, or others who are similarly situated, to discover public information such as the contents of Goodwine's expungement motion. Incarcerated individuals (whether *pro se*

_____

[4] While the Majority declares that, "[it] make[s] no assumptions regarding Appellant's access to Goodwine's criminal docket," Majority Opinion at 19, the text of its opinion is replete with examples that suggest the Majority's reservations about the access of *pro se* petitioners to public information. **See e.g. id**. at 16 ("a *pro se* petitioner does not have access to information otherwise readily available to the public;" "A PCRA petitioner is most often incarcerated, and thus, no longer a member of the public."). Indeed, it is these unsubstantiated assumptions that lead the Majority to reject clear Supreme Court precedent and shift the burdens of pleading and proof in all future PCRA cases in which *pro se* petitioners cite public information as the basis for invoking the timeliness exception set forth at § 9545(b)(1)(ii).

or represented by counsel) reside in prisons, not off-the-grid islands. Prisons within this Commonwealth have law libraries, computer terminals, internet access, and legal aid assistance. It is unsurprising, then, that in the closely related context of petitions that invoke newly-recognized constitutional rights under § 9545(b)(1)(iii), this Court routinely denies relief to *pro se*, incarcerated petitioners where, among other things, they fail to file their petitions within 60 days of the date a court decision enters the public domain. ***See Commonwealth v. Brandon***, 51 A.3d 231, 235 (Pa. Super. 2012) (*pro se* prisoner who had served more than two decades toward life sentence was not entitled to relief under § 9545(b)(1)(iii) because "the [60-]day period [began] to run upon the date of the underlying judicial decision" and prisoner filed PCRA petition more than 120 days after decision was filed); ***Commonwealth v. Boyd***, 923 A.2d 513, 517 (Pa. Super. 2007) (same), *appeal denied*, 932 A.2d 74 (Pa. 2007); ***Commonwealth v. Baldwin***, 789 A.2d 728, 731 (Pa. Super. 2001) (same), *appeal denied*, 863 A.2d 1141 (Pa. 2004).[5] The release of a newly-recognized constitutional right into the public domain is at least as

_____

[5] I realize, of course, that legal decisions are not facts and that § 9545(b)(1)(ii) is distinct from § 9545(b)(1)(iii). Nevertheless, the fact that our Supreme Court has denied further review in this line of cases at least tacitly suggests that it is disinclined to formulate a special accessed-based accommodation for *pro se* petitioners in cases invoking timeliness exceptions under the PCRA, as the Majority has done in the instant matter.

sporadic and unpredictable as the emergence of newly-discovered facts into the public sphere. In the former context, however, this Court consistently requires that a *pro se* petition be filed within 60 days of the filing date of the decision. The Majority's decision relieves *pro se* petitioners from this settled obligation in the context of § 9545(b)(2)(ii), even though Appellant never alleged that the lack of access to public records frustrated any investigative effort he undertook.

Third, the Majority's approach creates different classes of petitioners without fact-based justification. In this case, the Majority exempts all *pro se* petitioners from our Supreme Court's firmly rooted public records rule. This approach favors *pro se* petitioners over other members of the potential PCRA petitioner class without a rational basis. On its face, the Majority's rule incentivizes petitioners to forego the retention of counsel, even if it is within their means. Moreover, prospective petitioners who are represented by counsel, whether incarcerated or on parole or probation, are not entitled to the benefit of the Majority's rule, even if public information may be challenging for them to obtain. Neither § 9545(b)(1)(ii) nor any decisional law, until now, expressly condition favorable treatment on a petitioner's *pro se* status in the manor endorsed by the Majority. I do not think it wise to embark on such a course. **See Commonwealth v. Watts**, 23 A.3d 980, 983 (Pa. 2011) (PCRA "confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar[.]"). Instead, I would follow

an approach that considers whether, consistent with settled precedent, a petition pleads and proves due diligence or explains why new facts could not have been uncovered with the exercise of due diligence, as the PCRA contemplates.

In part, the Majority rationalizes the adoption of its new rule by asserting that the Commonwealth is free to come forward with proof that Appellant possessed access to public records such as Goodwine's expungement motion. Majority Opinion at 19 ("Absent evidence demonstrating Appellant's access to the contents of Goodwine's criminal docket, the public records rule does not apply.") and n.7 ("The Commonwealth is free, of course, to adduce evidence sufficient to establish [access to public records]. When it does, a PCRA court can engage in a real, fact-based inquiry. A finding of access may well preclude a petitioner from invoking the [newly]-discovered facts exception to the PCRA timeliness requirement (just as the general public records rule works where the petitioner is represented by counsel)."). I do not believe that this answers the questions relating to due diligence raised by this appeal. In truth, the Majority's reallocation of the burden of proof in PCRA cases is a poor compromise for its election to relax the diligence expected of a *pro se* petitioner who seeks relief years after the deadline for filing a petition has passed.

The law is settled that a PCRA petitioner (*pro se* or counseled) always carries the burden of pleading and proving that he exercised diligence to uncover the new information on which he relies. Without qualification, our Supreme Court has made this point unmistakably clear: "We have **repeatedly** stated it is the [petitioner's] burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Edmiston***, 65 A.3d 339, 346 (Pa. 2013) (citation omitted) (emphasis added), *cert. denied*, ***Edmiston v. Pennsylvania***, 134 S.Ct. 639 (U.S. 2013); ***Williams***, 105 A.3d at 1240; ***Commonwealth v. Hawkins***, 953 A.2d 1248, 1253 (Pa. 2008); ***Brown***, 111 A.3d at 176. If Appellant is to be awarded a hearing to determine whether the contents of Goodwine's motion were undiscoverable despite the exercise of due diligence, then it is his burden to allege circumstances that raise a genuine issue regarding that assessment, for that is what it means to shoulder a burden under the PCRA. ***Edmiston***, ***supra***. It is not the function of this Court to rewrite the law in an effort to salvage a legally defective petition. ***See Watts***, ***supra*** at 15. Since his petition demonstrated conclusively that he took no action for four years to discover publicly available information generated by Goodwine, it is obvious that Appellant failed to discharge his burden under the legal standards that prevailed at the time of filing.

Not only does the Majority impermissibly reallocate the burdens of pleading and proof in PCRA cases, it does so without offering interpretive

guidance as to how subjective elements factor into the due diligence inquiry. The Majority allows the Commonwealth to adduce evidence to establish a *pro se* petitioner's access to public information, but does not explain precisely what the Commonwealth must demonstrate in order to satisfy its new burden. For example, to establish sufficient access to public information, must the Commonwealth prove 60 continuous days of access to an open prison library, an available prison legal aide, a working computer system, and a serviceable internet connection capable of accessing public court dockets? If so, must the Commonwealth also prove that these resources were available at times when the petitioner was not in the infirmary or when the prison was not on lock down? How far into the past will the Commonwealth's new obligation extend? Here, the Commonwealth will have to prove access to public information for a specific petitioner at a specific facility[6] extending approximately five years into the past. In future cases, will the Commonwealth need to prove access as far as 10 or 15 years into the past? The *pro se* exception adopted by the Majority is not limited to recently-disclosed public information; hence, the scope and contours of this new duty imposed upon the Commonwealth under the Majority's ruling is entirely undefined and potentially quite onerous. The difficulties in

_____

[6] Of course, proving access to public information for petitioners who have been transferred during their time in prison or who have relocated while on parole or probation will present challenges that are more complicated for the Commonwealth.

implementing such a potentially far-reaching duty militate strongly in favor of continuing to follow our Supreme Court's objective approach to interpreting § 9545(b)(1)(ii).

Finally, the Majority's suggestion that Appellant had "no reason" to initiate an inquiry is unavailing. In support of its determination that nothing compelled Appellant to investigate exculpatory facts generated by Goodwine, the Majority relies heavily on the timing and contents of Goodwine's motion. *See* Majority Opinion at 18-19. In particular, the Majority notes that Goodwine filed his motion more than ten years after Appellant's judgment of sentence became final. *Id.* at 19. After such an extended period, the Majority finds it neither "realistic nor reasonable" to expect Appellant to continue to search public records to ascertain whether Goodwine may have disclosed potentially exculpatory information regarding Appellant's convictions. *Id.* The Majority also cites the contents of Goodwine's motion, which alleged that Goodwine was advised to forego a self-defense claim at trial and that he instead chose not to testify. Relying on these allegations, the Majority concludes that, "Goodwine's silence at trial (and his acquittal of the murder charges) eliminated any reasonable expectation [on the part of Appellant] that [Goodwine] would, thereafter, publicly acknowledge his guilt." Majority Opinion at 18. Ultimately, the Majority concludes that Appellant had "no reason to seek out facts in support of a claim for collateral relief." *Id.*

The Majority also finds fault with the PCRA court's assessments relating to the factors that could have triggered Appellant's investigation of exculpatory facts. First, the Majority criticizes the PCRA court's refusal to credit Appellant's claim that the Pennsylvania Innocence Project approached him in May 2013 without solicitation. *Id.* The Majority asserts that the PCRA court overstepped the bounds of its discretion by "mak[ing] a credibility finding in a vacuum." *Id.* The Majority also rejects the PCRA court's determination that Appellant must have known previously that Goodwine murdered Seth Floyd because the jury convicted both men of conspiracy. *Id.* Here, the Majority rejects the PCRA court's conclusions in light of Appellant's claims of innocence and the absence of a fully developed factual record. *Id.*

Based upon my own extensive review of the certified record in this case, I find no error or abuse of discretion in the PCRA court's determinations. Furthermore, as I shall detail below, I find an ample basis on which to conclude that Appellant had every reason to be particularly vigilant of Goodwine's criminal record filings since there was no more likely source of exculpatory information.

The record reveals that the **PCRA court presided over Appellant's and Goodwine's joint jury trial**, which commenced on September 21, 1993. At trial, a number of witnesses testified as to their knowledge of Floyd's murder, including medical experts, Allegheny County Correctional

Officers, and several inmates at the jail. Correctional Officer Gary Fluman testified that on March 9, 1993, at approximately 12:15 p.m., an inmate summoned him to a cell in the Allegheny County Jail. N.T., 9/22/93, at 254. Upon arriving at the cell, Officer Fluman observed a body covered by a mattress and bedding. *Id.* at 255. Officer Fluman removed the bedding and mattress and discovered Floyd's body tied by the throat with a ligature that was attached to a chain that held the bed to the wall.[7] *Id.* The officer did not detect a pulse. *Id.*

Dr. Leon Rozin, a forensic pathologist with the Allegheny County Coroner's Office, testified regarding his findings following an autopsy on Floyd's body. In addition to minor injuries, Dr. Rozin observed signs showing the use of a ligature on Floyd, including embedded markings on the victim's neck. N.T., 9/24/93, at 694-703. Based upon his examination, Dr. Rozin concluded that Floyd died as a result of asphyxiation that could have resulted from the ligatures placed around Floyd's neck. *Id.* at 701-702. Dr. Rozin also opined that it would have taken between three to five minutes to

_____

[7] Detective Gary Tallent testified that he processed evidence recovered from Floyd's jail cell. N.T., 9/21/93, at 374-375. In particular, Detective Tallent recovered a ligature device fashioned from a torn bed sheet and strands from a mop. *Id.* at 376-377. Detective Tallent also recovered a second ligature device made from a pink and white shoelace, which had been placed around Floyd's neck. *Id.* at 377. Detective Tallent noted that Floyd had a black athletic shoe on his left foot and that the matching right shoe was located on the floor of Floyd's cell. *Id.* There were no shoelaces in the black athletic shoes. *Id.*

kill the victim through strangulation but that he would have lost consciousness after the first or second minute. **Id.** at 703.

Micah Goodman was among the inmates who testified that he saw Appellant, Goodwine, and Floyd engaged in what he thought was wrestling in Floyd's cell on the day of the murder. N.T., 9/23/93, at 492. Appellant and Goodwine were standing behind Floyd pushing him on his bed and holding him down, while Floyd appeared to be trying to free himself. **Id.** at 493-494. Approximately ten to 15 minutes later, Goodman observed Appellant and Goodwine running down the steps in the jail. **Id.** at 501. A second inmate, Marvin Harper, confirmed Goodman's testimony. He testified that as he walked past Floyd's cell, he heard scuffling inside and saw two men, whom he identified at trial as Appellant and Goodwine, struggling with a third man on a bed. **Id.** Edwin Wright, a third inmate, identified Appellant and Goodwine as being in Floyd's cell around lunchtime on the day of the murder. **Id.** at 449-450. Inmate Gregory McKinney testified that Appellant admitted that he choked and suffocated Floyd with a plastic bag and then tied him to his bunk bed to make it appear as though he had committed suicide. **Id.** at 619; N.T., 9/24/93, at 628. Inmate Warren Parrott testified that, ten to 14 days before Floyd's murder, he overheard Appellant talking with Goodwine about deferring a transfer so that they could get together and "fix" a situation that had arisen with an individual from California, referring to Floyd. N.T., 9/23/93, at 528-546. Parrott understood this conversation

between Appellant and Goodwine as a plan to kill Floyd. *Id*. at 546. In addition, inmate William Johnson described Appellant and Goodwine as "partners" who were in each other's company "all the time." *Id*. at 600.

Based on the foregoing testimony from the certified record in this appeal, I am unable to agree with the Majority's determination that the PCRA court overstepped the bounds of its discretion by making credibility assessments in a vacuum or by prematurely reaching factual conclusions in the absence of a fully developed record. This Court acknowledges that, "[g]enerally, it is deemed preferable for the same judge who presided at trial to preside over the post-conviction proceedings since familiarity with the case will likely assist the proper administration of justice." *Commonwealth v. Martorano*, 89 A.3d 301, 307 (Pa. Super. 2014). Here, the PCRA court presided over the joint trial of Appellant and Goodwine and had the opportunity to hear the testimony of the Commonwealth's 19 witnesses, including medical experts, investigating detectives, jail guards, inmates, and others. This evidence, transcribed in over 1000 pages of trial testimony, overwhelmingly established Appellant's direct participation in Floyd's ligature strangulation, as well his involvement in a criminal conspiracy to commit murder with Goodwine. The definitive proof of Appellant's guilt, of which the PCRA court was undoubtedly aware, warranted the court's skepticism toward Appellant's professed lack of knowledge about the timing and content of Goodwine's criminal filing. In the face of such an abundant record, I cannot

fault the PCRA court for using its extensive knowledge and familiarity with the facts in this matter in reaching a result that fully complied with prevailing law.

In addition, based upon the extensive trial testimony that linked Appellant and Goodwine, I also believe that our recent decisions, on which the Majority heavily relies, do not support the conclusion that Appellant is entitled to the benefit of a sweeping *per se* rule which holds that he is entitled to relief based solely upon his *pro se* status. The Majority cites our decisions in **Commonwealth v. Medina**, 92 A.3d 1210, 1216 (Pa. Super. 2014) (*en banc*), *appeal granted*, 2014 WL 6991663 (Pa. 2014) and **Commonwealth v. Davis**, 86 A.3d 883 (Pa. Super. 2014). These cases, however, are factually distinguishable.

In **Medina**, this Court held that a petitioner, who relied on the personal recantation of trial testimony by a witness for the Commonwealth, met the newly-discovered facts exception. Central to our conclusion was the fact that the petitioner first learned of the witness' recantation on or after October 18, 2006 when the witness transferred to the same prison facility that housed the petitioner and informed him of police coercion. **Medina**, 92 A.3d at 1217-1218. There was no other source for the recantation evidence and the petitioner had no reason to look for it. **Id.** The record also confirmed that the petitioner filed his petition on December 5, 2006, within 60 days of the date he initially learned of the witness' recantation. **Id.**

Unlike the petitioner in **Medina**, Appellant here relied on a public court filing by his co-defendant Goodwine to establish an exception to the PCRA's time bar. In contrast to the Commonwealth witness at issue in **Medina**, whose coercion at the hands of police was unknown and unknowable, Appellant here was well aware of his co-defendant's involvement in the case at the time the murder occurred. Moreover, contrary to the Majority's conclusion, I believe that Goodwine's acquittal gave him license to make exculpatory disclosures without risk of criminal prosecution.[8] Combining Appellant's awareness of this fact with the precise factual posture of this case, Goodwine was the most, if not the sole, promising source of exculpatory evidence supportive of Appellant's innocence claim. This considerably narrowed the scope of Appellant's information search from "the entirety of the public domain" to the criminal docket filings of his former criminal confederate, Goodwine. Since Appellant had every reason to monitor Goodwine's court filings from the moment of conviction in 1993, **Medina** is distinguishable and does not mandate relief.

**Davis**, too, is inapposite. In **Davis**, a panel of this Court held that a petitioner properly invoked timeliness exceptions found at §§ 9454(b)(1)(i)

_____

[8] "Under the Double Jeopardy Clauses of both the United States and Pennsylvania Constitutions, as well as under Pennsylvania Crimes Code, a second prosecution for the same offense after acquittal is prohibited." **Commonwealth v. DeLong**, 879 A.2d 234, 238 (Pa. Super. 2005), *appeal denied*, 889 A.2d 1213 (Pa. 2005).

and (ii) where he acted diligently under the circumstances and "filed his *pro se* petition within 60 days of receiving [the] initial affidavit that instigated [his] discovery of all of [his] claims." ***Id.*** at 891. In so holding, we noted that while trial transcripts containing evidence of a witness' perjurious statements against the petitioner constituted information within the public domain, the petitioner nevertheless acted with due diligence under the circumstances since neither the witness nor the transcripts could be found. ***Id.*** In addition, focusing exclusively on the petitioner's trial in ***Davis***, the petitioner had no reason to know of enticements bestowed upon the witness by the Commonwealth. These facts distinguish ***Davis*** in that there can be no dispute in the present case that Appellant knew of Goodwine's role and acquittal in the murder as early as 1993. Moreover, Goodwine's expungement motion was, in fact, available on a public court docket, as evidenced by its recovery through the efforts of the Pennsylvania Innocence Project. Hence ***Davis***, like ***Medina***, does not support relief.[9]

_____

[9] The Majority also cites ***Commonwealth v. Bennett***, 930 A.2d 1264 (Pa. 2007) to support its contention that Appellant is entitled to relief. ***Bennett***, however, never involved an express holding that petitioners are entitled to special, access-based accommodations where they lack the benefit of counsel. Instead, the Supreme Court concluded that an order dismissing the petitioner's first PCRA appeal was only a public record in the broadest sense because such orders are not sent directly to the prisoner but only to counsel on the assumption that counsel will inform his client of the court's action. The Court then noted that the logic of this assumption breaks down where counsel abandons his client. Thus, the Court declined to treat the order as a
*(Footnote Continued Next Page)*

For each of the foregoing reasons, I would hold that Appellant's second petition is untimely on its face and that he failed to plead and prove a statutory exception to the PCRA's jurisdictional time-bar. Therefore, in my view, the PCRA court correctly determined that it lacked jurisdiction to consider Appellant's substantive claims. Accordingly, I dissent.

President Judge Gantman and Judge Shogan join this dissenting opinion.

*(Footnote Continued)* —————————————

public record where the prisoner's only means of access to the information was restricted by counsel's abandonment. ***Id*.** at 1266.

That is not the situation before us. Here, Goodwines' expungement motion resided on a public trial court docket, available to all who sought it. A third party, the Pennsylvania Innocence Project, recovered the document and transmitted it to Appellant. Appellant has offered no explanation for why he could not obtain Goodwines' expungement papers as the Pennsylvania Innocence Project did. Hence, the concern that confronted our Supreme Court in ***Bennett*** is simply not present here. Appellant, unlike Bennett, acted *pro se* from the initiation of the instant proceedings and, thus, never had any expectation of counsel's assistance. While the rule in ***Bennett*** might apply in cases where counsel's unanticipated abandonment defeats a petitioner's legitimate expectations, it has no application where the petitioner initiates the proceedings *pro se* and expects to continue in that capacity.

The Majority's approach effectively allows Appellant to transfer **his** duty of due diligence under the PCRA to a third party and, in turn, to rely on the results of the third party's efforts long after applicable deadlines have passed. I believe that such an approach is entirely inconsistent with prevailing interpretations of the PCRA's timeliness requirements.